David Puryear, Justice
After responding to the scene of a car accident involving Quianna S. Canada and Walter Long, Officer Jose Rodriguez issued Canada a citation for failure to yield. See Tex. Transp. Code § 545.151 (listing requirements for vehicle approaching or entering intersection). Subsequently, a complaint was issued alleging that Canada "operate[d] a motor vehicle" at an intersection that "was controlled by an official traffic control device" and "enter[ed] said intersection and fail[ed] to yield the right of way to another vehicle lawfully within said intersection." After a jury trial in the municipal court, the jury found Canada guilty and assessed a fine of $200, and the court rendered its judgment in accordance with the jury's verdict. Following that determination, Canada filed a motion for new trial. After considering the motion for new trial, the municipal court denied it, and subsequently, Canada appealed the municipal court's judgment to the county court at law. See Tex. Gov't Code § 30.00014. After reviewing the briefing by Canada and the State, the county court at law affirmed the judgment of the municipal court. Canada appeals the county court at law's judgment. See id. § 30.00027 (authorizing appeal to court of appeals). In her pro se brief filed with the county court at law, Canada urges that the municipal court erred by failing to grant her motion for new trial for the following reasons grouped into five issues on appeal: because there was insufficient evidence to support the jury's verdict, because Officer Hector Miramontes was improperly allowed to testify as an expert witness, because the municipal court improperly excluded evidence, because the municipal court had improper ex parte communications with Officer Rodriguez, because the municipal court failed to allow Canada to cross-examine Officer Rodriguez regarding past complaints made against him, because there was juror misconduct during the trial proceedings, because the jury panel did not represent a fair cross-section of the population, and because the State made inappropriate jury arguments. We will affirm the judgment of the county court at law.
STANDARD OF REVIEW AND GOVERNING LAW
As an initial matter, we note that Canada filed a pro se brief with the county court at law.[1] Although appellate courts "construe pro se pleadings and briefs liberally, a pro se litigant is still required to follow the same rules and laws as litigants represented by a licensed attorney."
*11 Williams v. State , No. 05-12-01015-CR, 2013 WL 4033640, at *2 (Tex. App.-Dallas Aug. 7, 2013, pet. ref'd) (mem. op., not designated for publication).
As discussed earlier, Canada appealed the municipal court's judgment to the county court at law. In order to perfect an appeal from the judgment of a municipal court of record, the defendant must file a motion for new trial setting out "the points of error on which the appellant complains." Tex. Gov't Code § 30.00014(c).[2] The reviewing court must decide the appeal "on the basis of the errors that are set forth in the appellant's motion for new trial and that are presented in the clerk's record and reporter's record." Id. § 30.00014(b). Accordingly, "when appealing from a municipal court of record, to preserve an issue for consideration, a claim of error must be raised in the motion for new trial, and the record must reflect that the same claim was raised before the municipal court." Leverson v. State , Nos. 03-15-00090-00092-CR, 2016 WL 4628054, at *2 (Tex. App.-Austin Aug. 30, 2016, no pet.) (mem. op., not designated for publication). Moreover, "[a]n appeal from the municipal court of record may not be by trial de novo." Tex. Gov't Code § 30.00014(b) ; see Swain v. State , 319 S.W.3d 878, 879 (Tex. App.-Fort Worth 2010, no pet.) (mem. op.) (providing that reviewing court "may not retry the case"). Instead, the reviewing court "sits as an appellate court and considers arguments addressing any errors shown in the municipal court record." Nelson v. State , Nos. 12-10-00263-00266-CR, 2011 WL 2638738, at *1 (Tex. App.-Tyler June 30, 2011, no pet.) (mem. op., not designated for publication).
After the reviewing court considers the appeal, a defendant may seek further appellate review with a court of appeals if "the fine assessed against the defendant exceeds $100 and the judgment is affirmed by the [reviewing] court" or if "the sole issue is the constitutionality of the statute or ordinance on which a conviction is based." Tex. Gov't Code § 30.00027(a). However, unlike more traditional appeals, "the record and briefs on appeal in the [reviewing] court constitute the record and briefs on appeal to the court of appeals unless the rules of the court of criminal appeals provide otherwise." Id. § 30.00027(b). Accordingly, the briefs before the reviewing court are "the operative brief[s] before" a court of appeals, see Roberts v. State , 49 S.W.3d 89, 90 (Tex. App.-Fort Worth 2001, pet. ref'd) ; see also O'Reilly v. State , 501 S.W.3d 722, 724 (Tex. App.-Dallas 2016, no pet.) (noting that defendant "raised three issues in his appeal to the county criminal court of appeals to which he is limited here on appeal"); Sanchez v. State , 137 S.W.3d 860, 861 n.2 (Tex. App.-Houston [1st Dist.] 2004, pet. dism'd) (explaining that discussion of appellate point "refer[red] to the issue raised in the brief filed by appellant in the county criminal court"), and a court of appeals may not "consider the briefs filed by the parties" with the court of appeals, see Brooks v. State , 226 S.W.3d 607, 609 n.3 (Tex. App.-Houston [1st Dist.] 2007, no pet.) ; see also *12 Avni v. State , No. 14-16-00445-CR, 2016 WL 7108398, at *2 (Tex. App.-Houston [14th Dist.] Dec. 6, 2016, no pet.) (mem. op., not designated for publication) (stating that "[t]he court of appeals will not consider briefs in a municipal appeal other than those filed in the county court"); Huy H. Le v. State , No. 14-14-00747-CR, 2015 WL 3524294, at *1 n.2 (Tex. App.-Houston [14th Dist.] June 4, 2015, no pet.) (mem. op., not designated for publication) (same). The Government Code does not fully address how a court of appeals should review an appeal from a judgment by a municipal court of record so as to account for the fact that there has been an intervening appellate determination by a reviewing court. However, the limitations imposed on the record and the briefing are strong indicators that the legislature intended for the review by a court of appeals to be a second appellate review independent of the determinations made by the first reviewing court, limited to the same challenges presented to the first reviewing court regarding the municipal court's judgment. Cf. Garrett v. State , 424 S.W.3d 624, 628 (Tex. App.-Houston [1st Dist.] 2013, pet. ref'd) (determining that court of appeals "review[s] the same two issues raised in the briefs submitted to the county criminal court at law").
In this case, Canada contends that the municipal court erred by denying her motion for new trial. A trial court's denial of a motion for new trial is reviewed under an abuse-of-discretion standard. Charles v. State , 146 S.W.3d 204, 208 (Tex. Crim. App. 2004), superseded by rule on other grounds as stated in State v. Herndon , 215 S.W.3d 901, 905 n.5 (Tex. Crim. App. 2007) ; see also Davis v. State , 329 S.W.3d 798, 803 (Tex. Crim. App. 2010) (noting that appellate courts review evidentiary rulings for abuse of discretion). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," Lopez v. State , 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," State v. Mechler , 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Moreover, "[a]n appellate court views the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling." Ocon v. State , 284 S.W.3d 880, 884 (Tex. Crim. App. 2009).
DISCUSSION
Sufficiency of the Evidence and Officer Miramontes's Testimony
In her first issue on appeal, Canada argues that the evidence presented at trial was legally insufficient to support the jury's verdict in this case and that Officer Miramontes was improperly allowed to testify as an expert witness.[3] The county court at law determined that there was sufficient evidence presented to the jury and that Canada failed to preserve her complaints pertaining to Officer Miramontes's testimony.
When challenging the sufficiency of the evidence in her brief, Canada asserts that she "entered the intersection lawfully" by keeping "a proper lookout," that Long was obligated to but failed "to keep a *13 proper lookout" even though he had the right of way, that Long "caused the collision" by failing to "operate his vehicle at a reasonable and proper rate of speed," that the presence of a stop sign in her lane without a "cross-traffic-does-not-stop sign" did not provide her with the requisite warning that she needed to yield to cars driving perpendicular to her, and that although Officer Miramontes was behind her before the accident, he failed to honk, turn on his sirens, or otherwise warn her that she should not proceed into the intersection. Although Canada argues in her brief that the evidence was legally insufficient to support the jury's verdict for the reasons summarized above, it does not appear that Canada made similar claims in her motion for new trial or generally assert that the evidence was legally insufficient.
In the portions of its opinion and judgment addressing Canada's sufficiency challenge, the county court at law noted that "[t]he State generously construes [Canada]'s motion for new trial as raising an overall issue of insufficient evidence by claiming the prosecutor misstated the elements of the charge in his closing argument." In light of that construction, the county court at law also addressed the sufficiency challenge "as if it were preserved for review" and determined that the evidence was sufficient to support the jury's verdict. We will similarly liberally construe Canada's motion for new trial.
When reviewing the sufficiency of the evidence, appellate courts view the evidence in the light most favorable to the verdict and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia , 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In this type of review, an appellate court must bear in mind that it is the factfinder's duty to weigh the evidence, to resolve conflicts in the testimony, and to make "reasonable inferences from basic facts to ultimate facts." Id. ; see also Tex. Code Crim. Proc. art. 36.13 (explaining that "jury is the exclusive judge of the facts"). Moreover, appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." Hooper v. State , 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Furthermore, appellate courts presume that conflicting inferences were resolved in favor of the conviction and "defer to that determination." Clayton v. State , 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In addition, courts must bear in mind that "direct and circumstantial evidence are treated equally" and that "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "can be sufficient" on its own "to establish guilt." Kiffe v. State , 361 S.W.3d 104, 108 (Tex. App.-Houston [1st Dist.] 2011, pet. ref'd). Moreover, "reviewing courts 'measure the sufficiency of the evidence by the so-called hypothetically correct jury charge, one which accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried.' " Smith v. State , 500 S.W.3d 685, 692 (Tex. App.-Austin 2016, no pet.) (quoting DeLay v. State , 465 S.W.3d 232, 244 n.48 (Tex. Crim. App. 2014) ). The evidence is legally insufficient if "the record contains no evidence, or merely a 'modicum' of evidence, probative of an element of the offense" or if "the evidence conclusively establishes a reasonable doubt." Kiffe , 361 S.W.3d at 107 (quoting Jackson , 443 U.S. at 320, 99 S.Ct. 2781 ).
*14 At the conclusion of the trial, the jury determined that Canada failed to yield to a vehicle in an intersection under section 545.151 of the Transportation Code. See Tex. Transp. Code § 545.151(a). That section provides, in relevant part, as follows: "[a]n operator approaching an intersection ... shall stop, yield, and grant immediate use of the intersection ... in obedience to an official traffic-control device, including a stop sign or yield right-of-way sign[,]" and "after stopping, may proceed when the intersection can be safely entered without interference or collision with traffic using a different street or roadway." Id.
During the trial, the State called Long, Officer Miramontes, and Officer Rodriguez to the stand. In his testimony, Long explained that he "was driving ... and the next thing [he] knew, there was a car in front of him" in the intersection. In addition, he recalled that Canada "was just looking straight ahead." Further, Long testified that he "hit the brake" but still ran into her car. During his cross-examination, Long admitted that he had "a duty to keep a proper lookout." After Long finished his testimony, the State called Officer Miramontes to the stand. During his testimony, Officer Miramontes explained that he witnessed the accident because he was behind the car that Canada was driving. When describing the events leading up to the accident, Officer Miramontes stated that Canada's car stopped at a stop sign and then "entered the intersection." In addition, Officer Miramontes recalled that he observed the car driven by Long heading in Canada's direction and related that he saw Long "approach the intersection at the same time Ms. Canada entered the intersection and-and a collision occurred." Moreover, Officer Miramontes recalled that although Canada had a stop sign in her lane of traffic, Long did not. Further, Officer Miramontes testified that Long did not appear to be speeding. Additionally, Officer Miramontes recalled that he issued Canada a traffic citation for violating section 545.151 of the Transportation Code by failing to "make sure that no other vehicles [we]re coming to prevent an accident" after stopping at a stop sign. See Tex. Transp. Code § 545.151(a).
Given our standard of review and in light of the testimony establishing that there was a stop sign in Canada's lane of traffic, that there was no stop sign in Long's lane of traffic, that Canada drove into the intersection after stopping at the stop sign, that Canada drove into Long's lane of traffic even though Long had the legal right of way, that Long attempted to avoid a collision by braking, and that Long was not speeding, we agree with the county court at law and similarly conclude that the evidence presented during the trial was legally sufficient to support the jury's determination.
Regarding her claims concerning Officer Miramontes's testimony, Canada contends that Officer Miramontes was improperly allowed to testify regarding scientific or technical information. More specifically, Canada asserts that Officer Miramontes was impermissibly allowed to provide expert-witness testimony regarding whether Long had been speeding without complying with the requirements for admitting expert testimony and in the absence of any evidence establishing that he had any training in accident reconstruction. See Tex. R. Evid. 701 (covering testimony by lay witnesses), 702 (pertaining to testimony by expert witnesses), 703 (allowing expert witness to base opinion on facts "in the case that the expert has been made aware of, reviewed, or personally observed"). As support for these arguments, Canada points to statements by Officer Miramontes during the trial in which he admitted that he did not *15 have a college degree in a scientific field. Further, Canada argues that the State "used perjured" testimony from Officer Miramontes "to convict ... Canada," which violated her "due process rights." As set out above, the county court at law determined that Canada failed to preserve these claims for appeal.
As described above, Officer Miramontes testified that Long did not appear to be speeding before the accident. When describing his training and qualifications at the beginning of his testimony, Officer Miramontes discussed how he had been certified by the Commission on Law Enforcement as an advanced traffic investigator and how the training allows him to "determine the speed of both vehicles" in an accident depending on "the placement of the vehicles, the placement of the parts that ... flew off the vehicle, [and] skid marks and yaw marks left by the tires." During Officer Miramontes's cross-examination, Canada asked Officer Miramontes if he "ever participated in a controlled study where [he was] asked to estimate speed" and if he "guess[ed] correctly all the time," and Officer Miramontes answered, "[y]es," to both questions.
As an initial matter, we note that Canada made no objection to the portions of Officer Miramontes's testimony elicited by the State in which he stated that Long did not appear to be speeding and in which he discussed his training and qualifications. See Tex. R. App. P. 33.1 (stating that to preserve error for appeal, record must show that complaint was made to trial court and that trial court ruled on request or refused to rule and that "complaining party objected to the refusal"); Yazdchi v. State , 428 S.W.3d 831, 844 (Tex. Crim. App. 2014) (stating that "the point of error on appeal must comport with the objection made at trial"); see also Acevedo v. State , 255 S.W.3d 162, 167 (Tex. App.-San Antonio 2008, pet. ref'd) (noting that parties are required to provide "specific objection" detailing "the particular deficiency in the expert's qualifications or the reliability of the expert's opinions"); Nelson v. State , No. 08-04-00274-CR, 2005 WL 1993295, at *7-8 (Tex. App.-El Paso Aug. 18, 2005, pet. ref'd) (not designated for publication) (noting defendant's argument that police officer should not have testified regarding effects of illegal drugs because testimony was not admissible as lay witness testimony and because officer was not qualified to testify as expert and determining that defendant failed to preserve argument because defendant did not object to testimony under Rules of Evidence 701, 702, or 703). In addition, the portion of the testimony regarding Officer Miramontes's prior experience estimating speed in a controlled study was elicited only by Canada during her cross-examination of Officer Miramontes. See Bailey v. State , 469 S.W.3d 762, 779 (Tex. App.-Houston [1st Dist.] 2015) (explaining that defendant may not challenge on appeal evidence elicited by his attorney at trial), aff'd , 507 S.W.3d 740 (Tex. Crim. App. 2016) ; see also Mumphrey v. State , 155 S.W.3d 651, 659 n.2 (Tex. App.-Texarkana 2005, pet. ref'd) (providing, with exceptions of meeting, rebutting, denying, or explaining improperly admitted evidence, that "[w]hen a defendant elicits the same testimony to which he or she has earlier objected, such defendant is not in a position to complain on appeal"). Furthermore, Canada did not mention Officer Miramontes's testimony in her motion for new trial or challenge his qualifications as an expert. Accordingly, we agree with the county court at law and similarly conclude that Canada has not preserved this complaint for appellate *16 review.[4]
Even assuming for the sake of argument that Canada preserved this issue for appeal, we would be unable to conclude that the municipal court abused its discretion by allowing Officer Miramontes to testify regarding whether Long appeared to be speeding. Under the Rules of Evidence, a lay witness may provide opinion testimony "that is ... rationally based on the witness's perception" and "helpful to clearly understanding the witness's testimony or to determine a fact in issue," Tex. R. Evid. 701 ; see also Osbourn v. State , 92 S.W.3d 531, 535 (Tex. Crim. App. 2002) (noting that "[p]erceptions refer to a witness's interpretation of information acquired through his or her own senses or experiences at the time of the event (i.e., things the witness saw, heard, smelled, touched, felt, or tasted)"), and "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," Tex. R. Evid. 702. In addition, "[w]hen a witness who is capable of being qualified as an expert testifies regarding events which he or she personally perceived, the evidence may be admissible as both Rule 701 opinion testimony and Rule 702 expert testimony." Osbourn , 92 S.W.3d at 536.
As summarized above, Officer Miramontes testified that he observed the accident happen and that Long did not appear to be speeding. See McMillan v. State , 754 S.W.2d 422, 425 (Tex. App.-Eastland 1988, pet. ref'd) (providing that "[t]he opinions of lay witnesses, when competent, are admissible concerning estimates of age, size, quality, time, and estimates of distance and speed," and a witness is competent "if he has the requisite personal knowledge of the subject matter"); see also Littlefield v. State , 167 Tex.Crim. 443, 321 S.W.2d 79, 82 (1959) (determining that "almost any witness," including children, "may express an opinion as to speed of an automobile"). In addition, Officer Miramontes testified that he had been certified as an advanced traffic investigator by the Commission of Law Enforcement and that his additional training allowed him to determine the speed of vehicles involved in an accident. See DeLarue v. State , 102 S.W.3d 388, 396, 397 (Tex. App.-Houston [14th Dist.] 2003, pet. ref'd) (noting that police officers are generally "not qualified to render expert opinions regarding accidents based on their position as police officers alone" but that "police officers are qualified to testify regarding accident reconstruction if they are trained in the science about which they will testify and possess the high degree of knowledge sufficient to qualify as an expert" and concluding that because officer had " 'special knowledge' regarding accident reconstruction that was derived from specialized education, practical experience, and an on-site inspection of the accident scene, ... the trial court did not act arbitrarily and unreasonably-namely, without reference to any guiding rule or principle-in admitting the State's expert witness's testimony"). Accordingly, assuming that Canada had objected to Officer Miramontes's testimony, we would be unable *17 to conclude that the municipal court abused its discretion by determining that the evidence was admissible as a lay opinion or as an expert opinion. See Tex. R. Evid. 701, 702.
Moreover, we have been unable to find anything in the record indicating that perjured testimony was offered during the trial or that Canada objected to any testimony on perjury grounds. See McLemore v. State , No. 05-16-00378-CR, 2017 WL 1360227, at *2 (Tex. App.-Dallas Apr. 12, 2017, pet. filed) (mem. op., not designated for publication) (determining that defendant's claim that police officer had perjured himself was "not preserved for [appellate] review" where "trial counsel did not object to" officer's testimony "as perjury" and "fully cross-examined" officer); see also Tex. Penal Code § 37.02(a) (defining perjury as making "a false statement under oath or swear[ing] to the truth of a false statement previously made and the statement is required or authorized by law to be made under oath").
For all of these reasons, we overrule Canada's first issue on appeal.
Alleged Ex Parte Communications and Officer Rodriguez's Personnel File
In her second and third issues, Canada asserts that there were improprieties centered around Officer Rodriguez's testimony that should have resulted in a new trial. These issues stem from Canada's discovery request asking that she be given the personnel records for Officer Rodriguez and another police officer. When responding to the request, the State sent "an itemized list" of disciplinary proceedings involving the officers. After receiving the list, Canada filed a motion to compel and requested that the personnel files for those officers be disclosed. In response, the State filed a motion explaining that its disclosure of the itemized list was inadvertent and arguing that the requested information was not subject to disclosure and that Canada's motion should be denied. In addition, the State recognized that "defendants have a constitutional right to receive material evidence that is exculpatory, that could be used for impeachment, or would reduce the punishment," see Brady v. Maryland , 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and asked the municipal court "to conduct an in camera inspection to determine whether" any portion of the files "must be disclosed under Brady ," see Thomas v. State , 837 S.W.2d 106, 114 (Tex. Crim. App. 1992) (suggesting that trial courts conduct in camera proceeding to determine if information contained Brady material). The municipal court performed an in camera inspection of the requested files and determined that "[t]he requested files are confidential" and "that the records contain[ed] no exculpatory materials as contemplated by Brady ." The municipal court also ordered Canada to destroy the inadvertently disclosed list.
During the trial, Canada attempted to ask Officer Rodriguez about a complaint regarding a crash investigation that was mentioned in the list from Officer Rodriguez's file that the municipal court ordered Canada to destroy, and the State objected. After considering the parties' arguments on the objection, the municipal court excused the parties and questioned Officer Rodriguez about the crash-investigation report off the record. Following the questioning of Officer Rodriguez, the municipal court ruled that it would not allow Canada to ask questions about the complaint because it was not allowed under the prior ruling by the court and because it was not relevant to the case at hand.
In her first set of arguments in her second and third issues on appeal, Canada contends that the municipal court violated Canon 6 of the Texas Code of Judicial Conduct by having an ex parte *18 communication with Officer Rodriguez. See Texas Supreme Court, Code of Judicial Conduct Canon 6(C)(2) (prohibiting municipal court judges from "directly or indirectly initiat[ing], permit[ting], [ ]or consider[ing] ex parte ... communications concerning the merits of a pending judicial proceeding"), reprinted in Tex. Gov't Code, title 2, subt. G, appx. B. Further, Canada contends that this violated her due-process rights, her right to a fair trial, and her right to be heard. See Abdygapparova v. State , 243 S.W.3d 191, 210 (Tex. App.-San Antonio 2007, pet. ref'd) (determining that trial court's ex parte communications with State were "evidence that the trial judge lacked the impartiality that due process requires"). After reviewing Canada's arguments, the county court at law determined that Canada failed to preserve these complaints for appeal and that even if she had preserved them, no improper ex parte communication occurred.
We agree with the county court at law's determinations. Based on the record before this Court, it does not appear that an ex parte communication occurred. "An ex parte communication is one that involves fewer than all parties who are legally entitled to be present during the discussion of any matter with the judge." Youkers v. State , 400 S.W.3d 200, 206 (Tex. App.-Dallas 2013, pet. ref'd). In this case, it appears that the municipal court questioned Officer Rodriguez outside the presence of Canada and the State in order to determine whether the information sought by Canada was subject to disclosure or relevant. That procedure is similar to other procedures that may be employed by trial courts regarding the potential disclosure of confidential information. Cf. Tex. R. Evid. 508 (authorizing trial courts to conduct in camera hearing regarding whether informant's identity should be disclosed and directing that "[n]o counsel or party may attend the in camera showing"). In any event, we also agree with the county court at law's conclusion that Canada failed to preserve these claims for appellate consideration because Canada made no objection during trial to the municipal court's decision to question Officer Rodriguez off the record and outside the presence of the parties. See Routier v. State , 112 S.W.3d 554, 586 (Tex. Crim. App. 2003) (concluding that defendant failed to preserve claim that trial court violated her rights by engaging in unrecorded ex parte communication by failing to make objection on that ground).
In her next set of arguments, Canada challenges the municipal court's ruling prohibiting the disclosure of the personnel file and the admission of evidence pertaining to the portion of Officer Rodriguez's personnel file that the State inadvertently disclosed. In particular, Canada asserts that the contents of the file should have been disclosed because the contents were subject to disclosure and not confidential or, alternatively, should have been disclosed under Brady .[5] When considering this argument, the county court at law determined that the contents of the file were confidential and that the municipal court did not abuse its discretion by determining that the file "contained no Brady evidence." See *19 Arsola v. State , Nos. 04-96-00963-00964-CR, 1998 WL 538125, at *2 (Tex. App.-San Antonio Aug. 26, 1998, no pet.) (not designated for publication) (explaining that appellate courts "review a trial court's ruling on whether evidence is within the reach of Brady ... under an abuse of discretion standard").
When the State argued to the municipal court that the file was confidential, it relied on provisions of the Local Government Code. Under section 143.089, the Code describes two types of personnel files for police officers: one that is mandatory, and one that is optional. Tex. Loc. Gov't Code § 143.089. The mandatory file is prepared by a municipality's civil service commission and must contain, among other things, "any letter, memorandum, or document relating to ... any misconduct by the ... police officer if the letter, memorandum, or document is from the employing department and if the misconduct resulted in disciplinary action by the employing department in accordance with this chapter." Id. § 143.089(a)(2). However, "[a] letter, memorandum, or document relating to alleged misconduct by the ... police officer may not be placed in the person's personnel file if the employing department determines that there is insufficient evidence to sustain the charge of misconduct." Id. § 143.089(b). The information in this file may be released if "required by law," id. § 143.089(f), including by requests under the Public Information Act, see Abbott v. City of Corpus Christi , 109 S.W.3d 113, 120-21 (Tex. App.-Austin 2003, no pet.). Regarding the optional file, police departments are allowed to maintain a separate personnel file "for the department's use, but the department may not release any information contained in the department file to any agency or person requesting information relating to a ... police officer." Tex. Loc. Gov't Code § 143.089(g) ; see City of San Antonio v. San Antonio Express-News , 47 S.W.3d 556, 562, 563 (Tex. App.-San Antonio 2000, pet. denied) (stating that "[s]ubsection (g) ... creates a category of information that is not available for public inspection" and "prohibits the disclosure of ... information of the type listed in" remaining portions of section 143.089 and to "information reasonably related to a police officer's ... employment relationship"); City of San Antonio v. Texas Att'y Gen. , 851 S.W.2d 946, 951, 952 (Tex. App.-Austin 1993, writ denied) (explaining that file prepared under subsection 143.089(g) is confidential and not subject to disclosure "under any circumstances").
If a police department receives a complaint regarding one of its officers that does not result in any disciplinary action, the documents related to the complaint are not made part of the mandatory personnel file but may be included in the optional personnel file maintained by a police department for its own use. See San Antonio , 851 S.W.2d at 949. When listing types of disciplinary actions, the legislature included demotions, suspensions, uncompensated duty imposed on a police officer, and termination of employment. See Tex. Loc. Gov't Code §§ 143.051 -.057. "An oral or written reprimand does not constitute discipline under" the governing provisions of the Local Government Code. See Tex. Att'y Gen. OR2009-05312 at n.1; Tex. Att'y Gen. OR2009-01304 at n.1; see also Goodson v. Castellanos , 214 S.W.3d 741, 747 n.3 (Tex. App.-Austin 2007, pet. denied) (providing that opinions by attorney general are persuasive authority).
A copy of Officer Rodriguez's personnel file was filed under seal as part of the record in this case. The file was maintained by the Austin Police Department, and any mention of misconduct pertains to complaints in which no disciplinary action was taken by the Austin Police Department against Officer Rodriguez. Accordingly, we agree with the county court at *20 law and conclude that the personnel file was confidential and not subject to disclosure under the Local Government Code. See Tex. Loc. Gov't Code § 143.089(g) ; cf. Tex. Code Crim. Proc. art. 39.14(a) (allowing discovery of items "not otherwise privileged").
Even though the information is not subject to disclosure under the Local Government Code, Canada argues that the information should have been disclosed under Brady . In Brady , the Supreme Court determined that a defendant's due process rights are violated if prosecutors suppress evidence favorable to a defendant if the evidence is material to establishing his guilt or his punishment. 373 U.S. at 87, 83 S.Ct. 1194. Evidence is favorable when "it may make the difference between conviction and acquittal" "if disclosed and used effectively." United States v. Bagley , 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). "Favorable evidence ... includes both exculpatory and impeachment evidence." Harm v. State , 183 S.W.3d 403, 408 (Tex. Crim. App. 2006).
As set out above, the information in the file pertained to investigations other than the one at issue in this case and does not mention Canada in any way. Moreover, the file also pertains to allegations in which the Austin Police Department took no disciplinary action against Officer Rodriguez. Accordingly, we agree with the determination by the county court at law and similarly conclude that the municipal court did not abuse its discretion by determining that the file was not exculpatory and would not have impeached Officer Rodriguez's testimony to such a degree that it would have made the difference in the outcome of the trial.
In her final set of arguments in these issues, Canada asserts that the municipal court erred when it prevented her from cross-examining Officer Rodriguez regarding the complaints contained in the file. In particular, Canada contends that she should have been allowed to question Officer Rodriguez regarding the prior complaints because it would have established Officer Rodriguez's alleged bias in this case and would have established that Officer Rodriguez had a reputation for untruthfulness.[6] During the trial, Canada invoked Rules of Evidence 608 and 613 when arguing that she should be allowed to cross-examine Officer Rodriguez about the prior complaints, and Canada similarly relies on those rules in her appellate brief.[7] See Tex. R. Evid. 608 (allowing reputation or opinion evidence), 613 (setting out procedure for questioning witness regarding bias or interest). When ruling on the State's objections to Canada's cross-examination, the municipal court determined *21 that the information sought was confidential and was not relevant to the issues present in the case.
Even setting aside the fact that the information sought was deemed confidential by statute and that the Rules of Evidence provide that evidence is not admissible if it is prohibited by a statute, see itation case-ids="8989263" index="67" url="https://cite.case.law/sw3d/183/403/#p408">id. R. 402, we would be unable to sustain Canada's issue on appeal. Although Rule 608 allows for "[a] witness's credibility" to "be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character," "a party may not inquire into or offer extrinsic evidence to prove specific instances of the witness's conduct in order to attack or support the witness's character for truthfulness." Id. R. 608. Accordingly, we cannot conclude that the municipal court abused its discretion by determining that Canada could not question Officer Rodriguez regarding specific prior complaints. Further, similar to our prior determination that the municipal court did not abuse its discretion by determining that the information in the file regarding prior complaints was not subject to disclosure because it would not effectively impeach Officer Rodriguez's testimony, we must also conclude that the municipal court did not abuse its discretion by determining that the questions regarding Officer Rodriguez's prior complaints in which no disciplinary action was taken were not relevant to establishing any bias or interest on behalf of Officer Rodriguez or to the issues presented in this case. See ids="8989263" index="69" url="https://cite.case.law/sw3d/183/403/#p408">id. R. 401 (explaining that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action"), 402 (stating that "[i]rrelevant evidence is not admissible").
For all of these reasons, we overrule Canada's second and third issues on appeal.
Argument by the State
In her fourth issue on appeal, Canada contends that the municipal court erred by allowing the State "to inject [its] own opinions in [its] closing argument," which deprived her of the presumption of innocence. See U.S. Const. amends. V, XIV. In particular, Canada points to a portion of the State's closing in which the State asked the jury members to "consider each and every bit of testimony in this case" and then stated, "[t]here was only one real person that I've heard bias throughout this whole case. And it's understandably so, it's the defendant. The reason is there's much at stake. It may seem like, oh, not very much to anyone else, because it's a fine only offense. But understandably so, she would want to represent herself to the best of her ability." In addition, Canada asserts that the State improperly referenced testimony that had been successfully objected to when making its closing arguments. Specifically, Canada notes that the trial court sustained her objections to the State's question to Long about what Long recalled "about seeing the defendant turn towards [him] after she was in the intersection" and to a portion of Long's testimony in which he explained that Canada "seemed to be unaware that I was there" before the accident, and Canada argues that despite these rulings, the State commented in its closing that Canada "didn't even look over at ... the time of ... [the] accident." In light of the preceding, Canada urges that the State's comments in its closing exceeded the scope of permissible argument, that the remarks "were improper and injuriously affected" her rights, that the remarks inappropriately communicated the State's opinion regarding her character when no evidence of her good *22 character had been introduced, and that the remarks presented "a new theory" that Canada had "no opportunity to contest." When addressing these claims, the county court at law determined that Canada failed to preserve the claims for appellate consideration; that even if she had, the comments by the State qualified as permissible jury arguments; and that even if the comments were improper, Canada was not harmed.
"To preserve error regarding improper jury argument for appellate review, a defendant must object and pursue his objection to an adverse ruling." Johnson v. State , No. 03-12-00006-CR, 2012 WL 1582236, at *7 (Tex. App.-Austin May 4, 2012, no pet.) (mem. op., not designated for publication) (citing Estrada v. State , 313 S.W.3d 274, 303 (Tex. Crim. App. 2010) and Tex. R. App. P. 33.1(a) ). "A defendant must contemporaneously object to the statement, request an instruction that the jury disregard the statement if the objection is sustained, and move for a mistrial if an instruction to disregard is given." Id. (citing Cook v. State , 858 S.W.2d 467, 473 (Tex. Crim. App. 1993) ). "[E]ven if an error" stemming from improper jury argument "could not be cured" by giving an instruction to the jury, the defendant would still be required "to object and request a mistrial." Mathis v. State , 67 S.W.3d 918, 926-27 (Tex. Crim. App. 2002). If a defendant fails to object to jury argument or fails to pursue an adverse ruling on his objection to the argument, he waives his right to complain about the allegedly improper jury argument on appeal. Cockrell v. State , 933 S.W.2d 73, 89 (Tex. Crim. App. 1996).
After the State made the argument regarding bias summarized above, Canada raised no objection to the argument. At the end of the State's closing, Canada did move for a mistrial, and the municipal court denied the request. When moving for a mistrial, Canada argued that the State's comments about the elements of the traffic offense were "highly prejudicial" but did not mention the allegedly improper bias argument complained of on appeal. Regarding the portion of the State's closing argument in which the State discussed what direction Canada was facing at the time of the accident, Canada did object to that statement. However, Canada did not mention or otherwise reference that comment or the statement regarding bias in her motion for new trial. On the contrary, when discussing closing arguments in her motion, Canada only argued that the State incorrectly instructed the jury in its closing on what the elements of the offense were. Accordingly, we must agree with the county court at law and conclude that Canada has waived these claims for review on appeal. Garza v. State , No. 13-96-00405-CR, 1997 WL 33642955, at *6 (Tex. App.-Corpus Christi Dec. 18, 1997, no pet.) (not designated for publication) (determining that defendant's failure to object or pursue adverse ruling regarding comments by State that witnesses were "heroin addicts" and "drunks" forfeited "his right to complain about the argument on appeal").
Even assuming for the sake of argument that Canada preserved these claims for appeal, we would be unable to sustain this issue on appeal. Proper jury argument falls into one of the following categories: "(1) summation of the evidence presented at trial, (2) reasonable deduction drawn from that evidence, (3) answer to the opposing counsel's argument, or (4) a plea for law enforcement." See Jackson v. State , 17 S.W.3d 664, 673 (Tex. Crim. App. 2000).
As set out above, Canada did successfully object to a question by the State about whether Long saw Canada turn her *23 head in his direction and later to testimony by Long that Canada seemed unaware that he was in the lane headed towards her. However, prior to Canada raising the second objection on grounds that Long could not know her state of mind, Long testified that he saw Canada "just looking straight ahead" and "just looking straight-straight ahead of her." In light of this testimony that was not objected to, the State's comments about where Canada was looking at the time of the accident would seem to qualify as summation of the evidence.
Regarding the bias comment, we note that during her opening statement, Canada argued that "the manner in which" the police "tried to make me doubt my reality and my memory was improper and uninformed. They were tempted by an easy explanation" and "lo[s]t their virtue of being good and responsible." In addition, Canada specifically stated that Officer Miramontes "formed a quick supposition about the accident without sufficient information" and that the police officers did not perform a thorough investigation. Moreover, during her closing argument before the State made the argument at issue, Canada asserted that "police officers can sometimes be dishonest," questioned how reliable the testimony from the police officers was and whether the jury should trust them, and urged again that the police did not do a thorough investigation. In light of these arguments and others by Canada, the State's comment about bias could arguably qualify as an answer to Canada's arguments.
Further, even assuming that the bias statement directed at Canada in her role as her own attorney exceeded the scope of permissible jury argument, see Anderson v. State , 525 S.W.2d 20, 22 (Tex. Crim. App. 1975) (determining that State exceeded scope of proper jury argument when State accused defense attorneys of lying); Garza , 1997 WL 33642955, at *5 (concluding that comment by State during closing that defendant's attorney's "job is to create doubt and confusion in your minds" was improper), we would be unable to determine that Canada was harmed by the error. In "assessing the impact of the harm arising from jury argument error," reviewing courts consider whether the defendant was harmed under Rule of Appellate Procedure 44.2(b). See Berry v. State , 233 S.W.3d 847, 858, 859 (Tex. Crim. App. 2007). Under that rule, nonconstitutional errors "must be disregarded" if they did "not affect substantial rights." Tex. R. App. P. 44.2(b). In performing this analysis pertaining to improper jury arguments, reviewing courts consider the following: "(1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and, (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction)." Berry , 233 S.W.3d at 858-59.
As set out above, Canada did not object to the allegedly improper statement so no instruction to disregard was given. However, the State did not make any other similar comments during its opening or closing or when it questioned the witnesses at trial. Further, the State clarified its comments regarding Canada's "bias" by explaining in its closing that it was simply referring to the fact that Canada was representing herself in the best light possible and that this was understandable because she was the defendant. Moreover, the evidence presented in this case, particularly the eyewitness testimony of Officer Miramontes describing Canada's actions on the day in question, strongly supported the judgment in this case.
*24 Accordingly, we agree with the county court at law that the statements made by the State in its closing were either proper jury argument or, alternatively, that if the bias comment exceeded the permissible scope, Canada was not harmed by that error.
For all of these reasons, we overrule Canada's fourth issue on appeal.
Juror Panel and Jury Misconduct
In her fifth issue on appeal, Canada argues that the municipal court should have granted a new trial because there was evidence of juror misconduct and because the jury panel did not represent a fair cross section of the population. Regarding the alleged juror misconduct, Canada asserted in her motion for new trial that she overheard in the municipal court bathroom one of the female jurors state that she "will always back the blue."[8] In light of this assertion, Canada requested a new trial on the grounds of juror misconduct and bias. Shortly after filing the motion for new trial, Canada also filed an "affirming affidavit" in which she stated, without further explanation regarding the alleged juror misconduct, that her allegations in the motion for new trial were all true.[9]
"[W]here a sitting juror makes statements outside of deliberations that indicate bias or partiality, such bias can constitute jury misconduct that prohibits the accused from receiving a fair and impartial trial." Granados v. State , 85 S.W.3d 217, 235 (Tex. Crim. App. 2002). "To preserve error caused by juror misconduct, the defendant must either move for a mistrial or file a motion for new trial supported by affidavits of a juror or other person in a position to know the facts alleging misconduct." Castillo v. State , 319 S.W.3d 966, 970 (Tex. App.-Austin 2010, pet. ref'd) ; see also McIntire v. State , 698 S.W.2d 652, 658 (Tex. Crim. App. 1985) (explaining that when alleged juror misconduct is based on facts outside record, facts "must be supported by the affidavit of a juror or some other person who was in a position to know *25 the facts, or must state some reason or excuse for failing to produce the affidavits" (internal quotation marks and citation omitted)). The "appellant has the burden of proving the allegation of juror misconduct." Hughes v. State , 24 S.W.3d 833, 842 (Tex. Crim. App. 2000). The accompanying affidavit must show that reasonable grounds exist to believe that juror misconduct has occurred. See Vera v. State , 868 S.W.2d 433, 435 (Tex. App.-San Antonio 1994, no pet.). A "trial court also has discretion in determining whether to grant a motion for a mistrial based on allegations of juror misconduct." Granados , 85 S.W.3d at 236.
In her motion for new trial and accompanying affidavit, Canada did not provide any context for the statement or set out any details about the statement except that she heard the juror say the phrase at issue. Furthermore, the motion and affidavit do not explain how the statement established bias or demonstrated that juror misconduct occurred. For those reasons, we could not conclude that the municipal court abused its discretion by determining that Canada failed to meet her burden of showing that reasonable grounds existed to believe that juror misconduct had occurred and, therefore, denying the motion for new trial.
On appeal, Canada attempts to explain how the statement established juror misconduct by arguing that the juror improperly withheld information during voir dire regarding an alleged bias in favor of the police when she failed to truthfully answer questions posed to the panel. In particular, Canada asserts that the juror's statement was a reference to the Back the Blue campaign, which she asserts "is a public awareness campaign designed and dedicated to displaying public support for law enforcement," but that the juror made no mention of the organization during voir dire. For these reasons, Canada contends that her right to a fair trial was violated and that the municipal court should have granted her motion for new trial. See Tex. R. App. P. 21.3(g) (providing that defendant must be granted new trial "when the jury has engaged in such misconduct that the defendant did not receive a fair and impartial trial").
Although withholding information during voir dire can deny the parties "the opportunity to exercise their challenges" and hamper "their selection of a disinterested and impartial jury," Armstrong v. State , 897 S.W.2d 361, 363 (Tex. Crim. App. 1995), Canada did not present these appellate arguments in her motion for new trial. Accordingly, we agree with the county court that Canada did not preserve this complaint for appeal. Even assuming that the argument had been presented to the municipal court for consideration, we note that "defense counsel has an obligation to ask questions calculated to bring out that information which might be said to indicate a juror's inability to be impartial and truthful." Id. at 363-64. If defense counsel does not ask those types of questions, "the material information which a juror fails to disclose is not really 'withheld.' " Id. at 364 (quoting Jones v. State , 596 S.W.2d 134, 137 (Tex. Crim. App. 1980), overruled on other grounds by Sneed v. State , 670 S.W.2d 262 (Tex. Crim. App. 1984) ).
During voir dire, the State asked the panel if they had "any previous experiences with law enforcement that may have a negative impact on you" and if they recognized any of the officers who were going to testify, and Canada asked the panel if they believed "that police officers tell the truth during every single encounter," if they had "a friend that's a police officer," and if they "talked to a police officer in an intimate conversation within *26 the last two months." Assuming without deciding that the statement that the juror "back[s] the blue" indicates a bias in favor of law enforcement, Canada did not specifically ask the panel if they had a bias in favor of law enforcement or if they supported organizations aimed at helping law enforcement. Accordingly, we would not be able to conclude that the municipal court abused its discretion by determining that the juror did not commit misconduct by withholding information regarding a bias in favor of law-enforcement officers. Cf. White v. State , 181 S.W.3d 514, 518, 519, 520 (Tex. App.-Texarkana 2005) (determining that trial court did not abuse its discretion by denying motion for new trial that asserted that juror failed to disclose that intoxicated driver had crashed into her car where jury panel was asked if "a close friend or a family member was seriously injured or a death was caused due to an intoxicated driver," noting that analysis considers whether defendant "used due diligence in eliciting the withheld information," and observing that specific questions are more helpful at satisfying "the duty to use due diligence in uncovering bias during voir dire"), aff'd 225 S.W.3d 571 (Tex. Crim. App. 2007).[10]
As mentioned earlier, Canada also contends that the jury selected in this case did not represent a fair cross section of the population because there was only one African American male on the venire panel and further argues that studies have shown that the exclusion of a particular racial group from jury panels can lead to inequitable jury results. In addition, Canada suggests that the single African American male might have been biased against her because his spouse was not African American, which, according to Canada, can indicate a bias against African American women. In her reply briefing, Canada also urges that the municipal court's reliance on the internet as part of its jury selection process resulted in an unfair representation of the community and that the unfair representation was further compounded by recent legislation by the State of Texas, which she asserts was aimed at preventing African Americans from voting. Finally, in her reply briefing, Canada contends that she was not provided with information regarding the names of individuals who would be serving on the venire panel until the day of trial and that after the trial, the municipal court did not provide her with information regarding the members of the panel who ended up serving on the jury. In light of those alleged errors asserted in her reply briefing, Canada contends that she was unable to provide a detailed and supported motion for new trial. When addressing these issues, the county court at law determined that Canada failed to preserve these claims for appellate review by failing to object or mention the claims in her motion for new trial.
Nothing in the record demonstrates the racial or ethnic makeup of the jury panel. See Ortega v. State , No. B14-87-00299-CR, 1988 WL 33214, at *2 (Tex. App.-Houston [14th Dist.] Apr. 7, 1988, pet. ref'd) (not designated for publication) (explaining that "[m]ere assertions in the brief ... concerning [defendant's] ethnic background *27 and that of the excluded juror, not supported by the record, cannot be accepted as fact on appeal" and that "[w]hen there is no evidence in the record concerning the composition of the jury panel from which the jurors were selected, no error is shown"). Perhaps more importantly, Canada made no objection regarding the jury panel to the municipal court and did not present the arguments summarized above in her motion for new trial. Accordingly, we agree with the county court at law that Canada failed to preserve these claims for appellate review. See Ducksworth v. State , Nos. 01-01-00065-00066-CR, 2002 WL 1164428, at *2 (Tex. App.-Houston [1st Dist.] May 30, 2002, no pet.) (not designated for publication) (concluding that argument that "the grand jury and petit jury did not represent a fair cross-section of the Harris County community" was not preserved for appeal because defendant "failed to bring" complaint "to the attention of the trial court"); see also Tex. Code Crim. Proc. art. 35.07 (requiring party challenging jury array to submit challenge "in writing setting forth distinctly the grounds of such challenge" and requiring defendant to file affidavit by him or "any credible person"); Lacy v. State , 899 S.W.2d 284, 288 (Tex. App.-Tyler 1995, no pet.) (explaining that if defendant fails to submit affidavit in compliance with requirements of article 35.07, "nothing is preserved for appellate review").
For all of these reasons, we overrule Canada's fifth issue on appeal.
CONCLUSION
Having overruled all of Canada's issues on appeal, we affirm the county court at law's judgment.

We note that Canada also filed a pro se appellate brief with this Court, but as will be discussed above, we may not consider the brief filed with this Court when considering this appeal.

"The City of Austin's municipal court is a municipal court of record." Jackson v. State , No. 03-05-00422-CR, 2006 WL 2380398, at *2 n.3 (Tex. App.-Austin Aug. 18, 2006, pet. ref'd) (mem. op., not designated for publication); see City of Austin, Rules of the Court. R. 2.3 (explaining that Austin municipal court is court of record and that "[a]ll jury trials shall be recorded by the court's digital system"). Accordingly, appeals from the Austin municipal court "are governed by sections 30.00014 and 30.00015 of the government code." See Jackson , 2006 WL 2380398, at *2 n.3 ; see also Tex. Code Crim. Proc. art. 45.042 (governing appeals from municipal courts that are not municipal courts of record).

When presenting this issue, Canada asserts that the evidence is both legally and factually insufficient. However, the court of criminal appeals has clarified that the "legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense." Brooks v. State , 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) ; cf. Lucio v. State , 351 S.W.3d 878, 895 (Tex. Crim. App. 2011) (explaining that "we do not review the factual sufficiency of the evidence ... on the elements of a criminal offense that the State is required to prove beyond a reasonable doubt").

In her reply briefing filed with the county court at law, Canada asserts that the State's arguments that she failed to preserve her complaints for appellate consideration should be disregarded because the State's arguments must yield to her "absolute right to a fair trial." However, we have been unable to find authority to support Canada's assertion that the types of issues that she presents on appeal need not be objected to in order to preserve error.

In her second issue on appeal, Canada also contends that Officer Rodriguez was improperly allowed to testify regarding the cause of the accident and points to portions of Officer Rodriguez's testimony that she asserts demonstrate that Officer Rodriguez failed to perform a thorough investigation in the matter. However, Canada failed to make any of these assertions in her motion for new trial and has, therefore, failed to preserve these complaints for appellate consideration.

When discussing this issue in her reply briefing, Canada contends that the municipal court's ruling violated her "Sixth Amendment Right of Confrontation." See U.S. Const. amend. VI (explaining that "the accused shall enjoy the right ... to be confronted with the witnesses against him"). However, Canada made no Confrontation Clause argument during the trial or in her motion for new trial and, accordingly, failed to preserve the issue for appeal. See Anderson v. State , 301 S.W.3d 276, 280 (Tex. Crim. App. 2009) (explaining that right to confront witnesses is subject to procedural default and that right is waived if defendant fails to make objection at trial).

In her reply briefing, Canada contends that it was error for the State to call Officer Rodriguez to the stand knowing that he would invoke "his Fifth Amendment right" and not testify about the prior complaints. See U.S. Const. amend. V (prohibiting person from being "compelled in any criminal case to be a witness against himself"). Canada did not make that objection during the trial or in her motion for new trial. Moreover, the record in this case reveals that Officer Rodriguez did not invoke his Fifth Amendment right.

On appeal, Canada asserts as proof of juror misconduct that the first juror also said the phrase "the way she was questioning those officers." However, Canada did not include that statement in her motion for new trial.

When considering these arguments, the county court at law determined that Canada failed to preserve this issue for appeal by failing to bring the matter to the municipal court's attention. In her brief, Canada explains that she actually overheard the statement before Officer Rodriguez finished his testimony and before both sides presented their closing arguments. Further, Canada contends that she did not disclose to the municipal court that she heard the juror make the statement because she felt "uncomfortable ... disclos[ing] the pertinent information" after the municipal court warned her on other matters. In particular, she asserts that the municipal court at the beginning of the trial informed her of the possibility of having to declare a mistrial if she attempted to provide testimony during her opening statement that she would not be proving later by taking the stand, and Canada also notes that the municipal court replied, "it depends on ... what it is," in response to a question she asked the municipal court near the end of the trial regarding whether the court would prohibit the State from asking about "any type of background information" if she took the stand.
The record reveals that Canada made no objection regarding any alleged juror misconduct and did not move for a mistrial. Although the failure to bring an issue to a trial court's attention can result in a waiver of that issue, we will assume without deciding that Canada's failure to bring this matter to the municipal court's attention did not result in waiver here in light of cases stating that a claim of juror misconduct can be preserved for appellate consideration by moving for a mistrial or by filing a motion for new trial presenting that claim. See, e.g. , Castillo v. State , 319 S.W.3d 966, 970 (Tex. App.-Austin 2010, pet. ref'd).

In her motion for new trial, Canada also alleged that she discovered after the trial that two of the jurors had family members who were law-enforcement officers, but Canada did not set out how she discovered this, how those officers were related to the jurors, or how the jurors improperly withheld that information. On appeal, Canada does not present any argument concerning her discovery that two of the jurors had family members who worked in law enforcement and does not urge that the jurors committed misconduct by withholding that information. Further, we note that Canada did not ask the jury panel if they were related to anyone working in law enforcement.