# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00299-CR

**Chano Casarez, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF HAYS COUNTY, 274TH JUDICIAL DISTRICT
NO. CR-15-0622, HONORABLE WILLIAM R. HENRY, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant Chano Casarez was indicted for one count of assault (family violence/impeding breath), a third-degree felony (Count I), *see* Tex. Penal Code § 22.01(b)(2)(B), one count of first-degree-felony burglary of a habitation with intent to commit "Assault Bodily Injury Family Violence Repeat Offender" (Count II), *see id.* § 30.02(d), one count of second-degree-felony burglary of a habitation with intent to commit assault (Count III), *see id.* § 30.02(c)(2), one count of stalking, a third-degree felony (Count IV), *see id.* § 42.072(b), and one count of first-degree-felony burglary of a habitation with intent to commit "Unlawful Interception, Use or Disclosure of Wire, Oral or Electronic Communications" (Count V), *see id.* § 30.02(d).  At trial, he pleaded guilty to Counts I and IV without a plea bargain and pleaded not guilty to the remaining three counts of burglary of a habitation.  The trial court instructed the jury to find Casarez guilty of Counts I and IV, and the jury so found.  The jury also found Casarez guilty of one count of "Assault Bodily Injury

Family Violence Repeat Offender," which was presented in the jury charge as a lesser-included offense of Count II, and also found him guilty of Counts III and V. The jury then assessed punishment at 10 years' imprisonment for each of Counts I, II, and IV, 20 years' imprisonment for Count III, and 22 years' imprisonment for Count V. The trial court signed judgments of conviction in accordance with the jury's verdicts and ordered the sentences to run concurrently.

In three appellate issues, Casarez contends that the trial court failed to instruct the jury on "all law" applicable to the case, that the convictions for burglary were not supported by sufficient evidence, and that the trial court improperly denied instructions on lesser-included offenses on Counts II, III, and V.[1] We will modify the trial court's judgments of conviction for Counts I and IV to correct non-reversible clerical error and affirm those judgments as modified. We will also affirm the remaining judgments of conviction.

## BACKGROUND

At trial, the State presented evidence that, on multiple occasions, Casarez entered the residence of the complainant, Rachel Martinez, without Martinez's permission. The State further provided evidence that, on two such occasions, Casarez assaulted Martinez and that, on another occasion, he covertly installed an audio recording device near her bed. These accusations formed the bases for the three counts of burglary of a habitation for which the State charged Casarez. The defense's central contention at trial was that Casarez did not commit the burglary offenses for which he was charged because he was a cotenant of Martinez's residence and therefore had a right to enter

---

[1] Casarez's appellate brief does not challenge his convictions for Counts I and IV.

2

the habitation. Furthermore, Casarez's appellate issues all concern whether he had a right to enter the residence. Accordingly, our recitation of background facts focuses on the evidence of ownership and possession of the property.

Martinez testified at trial that she dated Casarez from 2010 until 2015. In February 2013, she and Casarez jointly signed a lease on a house. A copy of this lease was admitted into evidence and shows that the lease commenced in February 2013 and would terminate in February 2014. According to Martinez, she alone signed a year-long renewal lease. This document was also admitted into evidence. It shows Martinez as the sole tenant and provides that the lease would run from February 2014 to February 2015.

Martinez also testified that Casarez moved out of the residence in November 2014. She confirmed that Casarez "still had a couple of baskets of clothes and an old broken-down truck" at the residence after moving out but testified, "He did not live there. That was my house." Martinez testified that she had the locks changed after Casarez moved out and that she had the property owner install "motion lights" in front of the house. In addition, Martinez testified that, from the time she moved into the house in 2013 to the time she moved out in 2016, she could "count on one hand how many times [Casarez] paid the rent."

The defense later called Fred Bost, a partner in the company that leased the property. Bost testified that he was the person responsible for signing the company's leases at the time in question. He further testified that the 2013–2014 lease bore his signature but that the signature on the 2014–2015 lease did "not appear to be [his] signature." When asked whether there was anything

3

about the 2014–2015 lease that "would cause [him] to question the process" of the lease's execution, Bost testified as follows:

> Bost: We try—we contacted Ms. Martinez to come in and execute the lease. We were told that she worked nights and slept during the day and she couldn't get to the office. So we mailed it to her.
>
> ***
>
> But we never—as far as I am—I know, we never received the signed lease back.
>
> Defense: Okay. So you mailed her a lease, but you never received it back?
>
> Bost: That's what I understand, yes.
>
> Defense: And when you looked—and after I subpoenaed you, you looked in your file cabinets and you never found this second lease . . . .
>
> Bost: We did not.

Bost also testified concerning the 2013–2014 lease's "holdover" provision. This paragraph of the lease provides,

> If Tenant does not vacate the Premises following termination of this lease, Tenant will become a tenant at will and must vacate the Premises on receipt of notice from Landlord. No holding over by Tenant, whether with or without the consent of Landlord, will extend the Term.

Finally, Bost testified that Martinez did ask him to install "floodlights."

Casarez was convicted and sentenced, and this appeal followed.

4

## DISCUSSION

**Jury Charge**

In his first appellate issue, Casarez contends that the trial court "should have charged on 'all law applicable to the case.'" Specifically, Casarez complains that the trial court refused to include the following instruction in the jury charge, which the defense requested at trial:

> You are instructed that when a residential lease ends, and the tenant or tenants named on the lease do not move out and continue paying rent, said tenant(s) continue as tenant(s) on a month-to-month basis.

According to Casarez, "[t]he court should have defined 'tenant,' 'lease,' and when a lease terminates—none of which are found in the Penal Code." Casarez further argues that he became a month-to-month tenant after the expiration of the 2013–2014 lease and that, because he remained a tenant, "he had a right to be in the residence, and therefore, could not have burglarized them [sic]."

We review alleged jury-charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *See Arteaga v. State*, 521 S.W.3d 329, 333 (Tex. Crim. App. 2017); *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).[2]

Casarez does not cite any authority supporting his argument that the trial court erred in refusing to submit instructions not derived from the Penal Code. Indeed, as Casarez concedes,

---

[2] We note that Casarez's appellate brief does not discuss the standard of review of his alleged charge error, nor does he explain how he has been sufficiently harmed by alleged error to require reversal. *See* Tex. R. App. P. 38.1(i).

precedent from the Texas Court of Criminal Appeals, which is binding on this Court, holds that trial courts hearing criminal cases are generally *not* required to instruct the jury on matters outside the Penal Code. *See Kirsch v. State*, 357 S.W.3d 645, 651 (Tex. Crim. App. 2012) ("We have generally held that, if a jury-charge instruction 'is not derived from the [penal] code, it is not "applicable law"' under art. 36.14[3].") (quoting *Walters v. State*, 247 S.W.3d 204, 214 (Tex. Crim. App. 2007)); *see also Celis v. State*, 416 S.W.3d 419, 433 (Tex. Crim. App. 2013) (plurality op.) ("Non-statutory instructions, even when they are neutral and relate to statutory offenses or defenses, generally have no place in the charge."); *Ramos v. State*, No. 03-12-00302-CR, 2014 WL 2957742, at *6 (Tex. App.—Austin June 26, 2014, no pet.) (mem. op., not designated for publication) ("Generally, if a proposed instruction is not derived from the penal code, it is not law applicable to the case, and may instead be an impermissible comment on the weight of the evidence.").

Moreover, the Penal Code itself defines "owner": a person is an owner if she "has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor." Tex. Penal Code § 1.07(a)(35)(A). Furthermore, "possession" means "actual care, custody, control, or management." *Id.* § 1.07(a)(39). The jury charge in this case correctly provided these Penal Code definitions.

Because the court's charge correctly instructed the jury on ownership as defined by the Penal Code and in light of the precedent discussed above holding that courts are generally not

---

[3] *See* Tex. Code Crim. Proc. art. 36.14 (requiring trial judge to "deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury").

required to include instructions not derived from the Penal Code, we cannot conclude that the trial court erred by refusing the instruction on tenancy that Casarez requested. Accordingly, we overrule Casarez's first appellate issue.

**Sufficiency of the Evidence**

In his second appellate issue, Casarez contends that the evidence was insufficient to support his convictions for burglary of a habitation because the State failed to prove "[t]hat Appellant had no right to enter the premises."

In evaluating the sufficiency of the evidence supporting a jury's verdict, we view the evidence in the light most favorable to the verdict and ask whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012) (quoting *Brooks v. State*, 323 S.W.3d 893, 902 n.19 (Tex. Crim. App. 2010)). We are instructed only to "ensure that the evidence presented supports the jury's verdict and that the state has presented a legally sufficient case of the offense charged." *Id.* "The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses," and if "the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination." *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). "In our sufficiency review we consider all the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or the defense." *Boguang Li v. State*, No. 03-18-00237-CR, 2018 WL 2423211, at *3 (Tex. App.—Austin May 30, 2018, no pet.) (mem. op., not designated for publication) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007), *Thompson v. State*, 408 S.W.3d 614, 627 (Tex. App.—Austin

7

2013, no pet.)). We measure sufficiency of the evidence against the elements of the offense as defined by a hypothetically correct jury charge. *See Ramjattansingh v. State*, 548 S.W.3d 540, 546 (Tex. Crim. App. 2018); *Canada v. State*, 547 S.W.3d 4, 13 (Tex. App.—Austin 2017, no pet.).

In his appellate brief, the entirety of Casarez's argument concerning the sufficiency of the evidence is as follows:

> As contended in point #1, the hypothetically correct charge in this case would require some instruction on the law of leases. Measured against that hypothetical charge, the evidence in this case falls short. Therefore, Appellant should be acquitted of all burglary counts.

Liberally construing this argument, we understand Casarez to be contending that he was a holdover tenant under the lease and, therefore, could not have committed burglary because he had a right to enter the residence.

However, as discussed above, the trial court did not err in instructing the jury on the definitions of "owner" and "possession" found in the Penal Code. The evidence at trial showed that Casarez had moved out of the residence before committing the alleged burglaries, that Martinez had the locks changed, and that Casarez entered without Martinez's effective consent. Therefore, under the Penal Code definitions, Martinez was the "owner" of the residence because she exercised actual care, custody, control, or management of the residence, even assuming, for the sake of argument, that Casarez was still a tenant under the terms of the lease.

This is consistent with our decision in *Mack*, where we held that the evidence was sufficient to prove the predicate offense of burglary even though the defendant had signed the lease as a cotenant:

Appellant's position cannot withstand, on this factual record, a straightforward application of the "greater right to possession" doctrine. The record clearly shows that, at the time of the offense, [the victim] had a greater right than appellant to custody and control of the apartment. Appellant voluntarily moved out, removed almost all of his possessions from the apartment, and began living with his parents. Appellant stopped paying rent or utilities, and Shaw repaid him for his portion of the deposit. Appellant agreed not to visit the apartment unless he first called for permission. Appellant's only remaining claim to an interest in the apartment was the fact that his name remained on the lease contract. However, the greater right of possession doctrine does not credit rights that are unrealized at the time of the offense; instead, we must compare the parties' *actual* rights to custody and control of the property *on the date of the offense*. Even if appellant could have regained possession of the apartment by virtue of his contractual rights, he had voluntarily abandoned those rights on the date of the offense and had far less right, *at that time*, to control of the apartment than did [the victim] . . . . The touchstone of our analysis is not whether the defendant has any right to possession of the property at all, but whether the alleged owner's right to possess the property is greater than the defendant's.

*Mack v. State*, 928 S.W.2d 219, 223 (Tex. App.—Austin 1996, pet. ref'd) (citations omitted); *see Dominguez v. State*, 355 S.W.3d 918, 923 (Tex. App.—Fort Worth 2011, pet. ref'd) (explaining that a person commits burglary by breaking into a habitation in another's possession).

Because we have determined that a rational trier of fact could have found beyond a reasonable doubt that, at the time of the burglaries, Martinez had possession of the property, whether lawful or not, or had a greater right to possession of the property than Casarez, we conclude that the evidence was sufficient to support Casarez's burglary convictions. Accordingly, we overrule his second appellate issue.

**Lesser-Included Offenses**

In his third appellate issue, Casarez complains that the trial court should have instructed the jury on lesser-included offenses for each count of burglary of a habitation. According

9

to Casarez, "[t]here was some evidence that Appellant was a tenant ([and not] a burglar) because of the reasons set forth in points #1 and #2 (i.e., his lease never terminated)." Therefore, argues Casarez, the court should have granted the defense's request "that each count also be charged as the lesser included offense contained within the burglary count."

In his appellate brief, Casarez asserts, "In this case, Defense counsel duly requested LIO's [lesser-included offenses] be included for each burglary count—on the theory that the jury might agree Appellant wasn't a burglar, but guilty of the acts allegedly committed, or intended, after entry. This appears in vol. 5, pages 56 through 58 of the trial transcript." However, the cited pages do not indicate that the defense requested any instructions on lesser-included offenses. Instead, in those pages, the trial court is reading to the jury the completed charge, which did include an instruction on the lesser-included offense of "Assault Bodily Injury Family Violence Repeat Offender" for Count II and also included an instruction on the lesser-included offense of "Interception of an Oral Communication" for Count V. Thus, the record before us indicates that the court did in fact instruct the jury on lesser-included offenses for two out of the three burglary counts, and the record does not indicate that the defense ever requested any additional instructions on lesser-included offenses. Trial courts have no duty to *sua sponte* instruct the jury on lesser-included offenses. *See Tolbert v. State*, 306 S.W.3d 776, 781 (Tex. Crim. App. 2010); *see also Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018) (discussing *Tolbert*); *Crosby v. State*, No. 06-17-00179-CR, 2018 WL 1439847, at *1 (Tex. App.—Texarkana Mar. 23, 2018, no pet.) (mem. op., not designated for publication) (noting that "the trial court has no duty to instruct the jury on lesser-included offenses in the absence of a request by the defense").

10

Because the record before us does not indicate that Casarez requested instructions on lesser-included offenses beyond those given by the trial court, we overrule his third appellate issue.[4]

**Clerical Errors**

Our own review of the record reveals that the trial court's judgments of conviction for Counts I and IV contain non-reversible clerical error in that they indicate that Casarez pleaded not guilty to the charged offenses. However, the record indicates that Casarez pleaded guilty to those counts. This Court has authority to modify incorrect judgments when the necessary information is available to do so. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Accordingly, we will modify the judgments for Counts I and IV to reflect that Casarez pleaded guilty to those counts.

## CONCLUSION

We modify the trial court's judgments of conviction for Counts I and IV to reflect that Casarez pleaded guilty to the offenses, and we affirm those judgments as modified. We affirm the trial court's remaining judgments of conviction.

---

[4] We also note that Casarez would not have been entitled to instructions on lesser-included offenses based on the arguments made in his appellate brief. As discussed above, the question of whether he was a holdover tenant under the terms of the lease was not determinative of whether he entered Martinez's residence without her effective consent under the burglary statute.

_____

Scott K. Field, Justice

Before Chief Justice Rose, Justices Field and Toth

Count I: Modified and, as Modified, Affirmed

Count II: Affirmed

Count III: Affirmed

Count IV: Modified and, as Modified, Affirmed

Count V: Affirmed

Filed:   November 21, 2018

Do Not Publish

12