# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-20-00080-CR

---

**Dusty Lynn Thompson, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 119TH DISTRICT COURT OF TOM GREEN COUNTY
NO. B-16-1102-SB, THE HONORABLE CARMEN DUSEK, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Dusty Lynn Thompson of the offense of theft of cattle and assessed punishment at five years' imprisonment and a $5,000 fine. *See* Tex. Penal Code § 31.03(a), (e)(5)(A). The district court suspended imposition of the prison sentence and placed Thompson on community supervision for five years. In five issues on appeal, Thompson asserts that the evidence is insufficient to support his conviction, that the State committed prosecutorial misconduct, that the indictment is fatally defective, and that there was reversible error in the jury charge. We will affirm the judgment of conviction.

## BACKGROUND

The State alleged that Thompson stole cows that belonged to Coty Strain. At trial, the jury heard evidence that on October 6, 2016, Thompson called his friend and neighbor,

Mike McClellan, and told him that Thompson had found three black cows standing outside his garage. McClellan testified that he told Thompson that "he should call the police" because in Texas, "you can't just keep cattle. You know, you have to tell the law enforcement, you know, that you've got them and give them back to the rightful owners." Later that morning, McClellan received the following text message from Thompson: "Hey, don't say anything about the beef to anyone. It looks tasty." When McClellan texted Thompson back, inquiring about the status of the cows, Thompson called McClellan and "said he was going to pen them up and feed them out to butcher them." Later that day, when McClellan was returning home from work, he drove past Thompson's property and observed that the cows were "penned up, sitting beside [Thompson's] property." Several days later, Thompson told McClellan that "he had been watching videos of how to butcher cows on YouTube" and asked McClellan if he would help him. McClellan shrugged and said nothing, not wanting to become involved in what he characterized as Thompson's "criminal intent." Several days after that, Thompson asked McClellan if he "knew anybody who had a cattle trailer," and McClellan told him that he did not.

On October 23, 2016, Thompson met with an acquaintance, Glenn Tatsch, at a local Buffalo Wild Wings and asked him if he had a trailer and could "move some cows for him." Tatsch agreed and transported the cows from the pen at Thompson's house to an eighteen-acre tract of land ("the Pasture"), also owned by Thompson, that was located approximately one mile down the road from his house.

The Pasture was located behind a residence owned by Thompson that he had rented to Hannah Bryant, who lived on the property. Bryant testified that on October 23, she received a text message from Thompson telling her, "I put cows in the back of your property. Keep the fence up." Bryant went to the Pasture to look at the cows and "noticed that they did

2

have brands on them and that they did have ear tags on them." At that point, Bryant "knew something was wrong" because "someone like [Thompson] would not own cows that appeared like that, that were bred, that were nice, good-looking cows. He just didn't own livestock like that." Bryant asked a game warden for advice and then contacted the Texas and Southwestern Cattle Raisers Association, telling them that "cows were put on her property" and that she was "more than sure that they do not belong to [her] landlord."

The case was assigned to Texas Ranger Kenneth Wadsworth, who testified that he called Bryant and asked her if the cows were branded. Bryant answered in the affirmative and sent Wadsworth a photograph of the brand, which was identified as belonging to Coty Strain. Wadsworth contacted Strain and described the cows to him. Strain confirmed that the cows belonged to him, informing Wadsworth that although he was unaware that any of his cows were missing, "he knew that somebody had run through his fence several weeks earlier," which would have allowed the cows to escape his property.

As Wadsworth continued his investigation, he received a call from Thompson, who admitted that the cows were on his property, that he had moved them from one location to another, and that he had been feeding them. Thompson also informed Wadsworth that one of the cows had given birth to a calf, and he asked Wadsworth if he would be able to "keep the calf, being that it was born on [his] property." Wadsworth told him that he would not. Wadsworth asked Thompson if he had attempted to find the owner of the cows or contact the sheriff's office to report that he had found cows on his property. Thompson told Wadsworth that he had not, and Wadsworth confirmed during his investigation that Thompson had not reported the cows to the sheriff's office.

3

Thompson testified in his defense. He claimed that the text message that he had sent to McClellan about the cows looking "tasty" was a joke. Thompson denied that McClellan or anyone had told him that he needed to contact law enforcement about the cows, and he further denied that he had discussed butchering the cows. Thompson admitted to fencing the cows on his property, but he claimed that he had done so on the advice of a former sheriff's deputy, Walter Bryant, and only for the purpose of keeping the cows safe until their owner could be found. Thompson also claimed that he had moved the cows to his other property because (1) he knew that one of the cows was pregnant, and his other property had more space for the calf to roam after birth, and (2) he believed that the cows would be easier for the owner to find on his other property. Thompson claimed that he did not intend to keep the cows or deprive the owner of them. However, Thompson acknowledged during cross-examination that other than Mike McClellan, he did not contact any of his neighbors regarding the cows.

Walter Bryant, the former sheriff's deputy, also testified for the defense. He acknowledged that he had advised Thompson to "pen [the cows] up, because that's what [they] had done at the sheriff's office, keep them off the roadway," and wait for the owner to claim them. Bryant, who worked for Thompson at the time of the alleged theft and during trial, testified that he had helped Thompson construct a pen to keep the cows secure and had bought feed for the cows at Thompson's request. Bryant further testified that in his experience, the sheriff's office was of limited assistance when stray cattle were found, so he had not advised Thompson to contact the sheriff's office. However, Bryant conceded on cross-examination that when he had been a patrol officer and found stray cattle, he would contact dispatch and report the cattle.

4

After hearing the evidence, the jury found Thompson guilty of theft of cattle as charged. This appeal followed.

## DISCUSSION

**Sufficiency**

In his first and second issues, Thompson challenges the sufficiency of the evidence supporting his conviction. Specifically, he argues that the evidence is insufficient to prove that he intended to steal the cattle. In his first issue, Thompson claims that his intent is negated by evidence showing that his tenant, Hannah Bryant, notified authorities that the cattle were on Thompson's property. Thompson characterizes Bryant as his "agent" and claims that she was acting on his behalf. In his second issue, Thompson asserts that his intent is negated by evidence showing that he had relied on the advice of the former sheriff's deputy who advised him to keep the cattle on his property.

"Evidence is sufficient to support a criminal conviction if a rational jury could find each essential element of the offense beyond a reasonable doubt." *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "We view the evidence in the light most favorable to the verdict and consider all of the admitted evidence, regardless of whether it was properly admitted." *Id.* "The jury is the sole judge of credibility and weight to be attached to the testimony of the witnesses." *Id.* "Juries can draw reasonable inferences from the evidence so long as each inference is supported by the evidence produced at trial." *Id.* A reviewing court is not permitted to "reevaluate the weight and credibility of the evidence in the record and thereby substitute [its] own judgment for that of the factfinder." *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018). Instead, a

5

reviewing court is to "adhere to the *Jackson* standard and determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). "When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict and defer to that determination." *Merritt v. State*, 368 S.W.3d 516, 525-26 (Tex. Crim. App. 2012). "Legally sufficient evidence need not exclude every conceivable alternative to the defendant's guilt, and the law requires no particular type of evidence." *Johnson v. State*, 560 S.W.3d 224, 226 (Tex. Crim. App. 2018) (internal citation omitted). "Direct and circumstantial evidence are equally probative, and 'circumstantial evidence alone can be sufficient to establish guilt.'" *Id*. (quoting *Hooper*, 214 S.W.3d at 13).

"Theft is the unlawful appropriation of property without the effective consent of the owner [and] with the intent to deprive the owner of property." *Id*. at 227 (citing Tex. Penal Code § 31.03(a)). On appeal, Thompson challenges the element of intent to deprive. A person acts with intent "when it is his conscious objective or desire to engage in the conduct or cause the result." Tex. Penal Code § 6.03(a). "Deprive" means "to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner," "to restore property only upon payment of reward or other compensation," or "to dispose of property in a manner that makes recovery of the property by the owner unlikely." *Id*. § 31.01(2).

"We cannot read an accused's mind, and absent a confession, we must infer his mental state from his 'acts, words and conduct.'" *Nisbett v. State*, 552 S.W.3d 244, 267 (Tex. Crim. App. 2018) (quoting *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991)); *see Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981) ("Intent to deprive must be

determined from the words and acts of the accused."); *Lee v. State*, 442 S.W.3d 569, 580 (Tex. App.—San Antonio 2014, no pet.) ("While proof of intent cannot rely simply on speculation and surmise, the factfinder may consider the defendant's conduct and surrounding circumstances and events in deciding the issue of intent."). In a theft case, the intent to deprive the owner of his property may be inferred from actions such as failing to return property to its rightful owner, *see Amado v. State*, 983 S.W.2d 330, 333 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd), failing to inform a property owner that one is in possession of their property, *see Rowland v. State*, 744 S.W.2d 610, 613 (Tex. Crim. App. 1988), fleeing with the property, *see Johnson v. State*, 606 S.W.3d 386, 394–95 (Tex. App.—Houston [1st Dist.] 2020, pet. granted), altering the appearance of property to impede its discovery, *see Raney v. State*, 769 S.W.2d 698, 699 (Tex. App.—Corpus Christi-Edinburg 1989, no pet.), moving or attempting to move the property, *see Barnes v. State*, 513 S.W.2d 850, 851 (Tex. Crim. App. 1974); *Gonzales v. State*, No. 04-96-00210-CR, 1997 WL 94162, at *2 (Tex. App.—San Antonio Mar. 5, 1997, no pet.) (not designated for publication) (per curiam), taking possession of property by threatening its owner with harm, *see Banks v. State*, 471 S.W.2d 811, 812 (Tex. Crim. App. 1971), and discovering abandoned property that has an ascertainable owner but not attempting to locate that owner, *see Williams v. State*, 268 S.W.2d 670, 671–72 (Tex. Crim. App. 1954).

In this case, the evidence tending to show that Thompson intended to deprive the owner of his property included the following: (1) Thompson did not report the cows to law enforcement, despite being told by McClellan that he "should call the police"; (2) Thompson did not attempt to locate the owner of the cows, even though they were branded and thus had an ascertainable owner; (3) Thompson did not ask his neighbors if the cows belonged to them; (4) Thompson constructed a pen on his property for the cows and kept them there for

7

approximately two weeks; (5) Thompson transported the cows from where he had found them to another location approximately one mile down the road, presumably farther removed from their place of origin; (6) Thompson asked McClellan not to "say anything about the beef to anyone" because "[i]t looks tasty";[1] (7) Thompson told McClellan that he wanted to "butcher" the cows and "had been watching videos of how to butcher cows on YouTube," and he asked McClellan if he would be willing to help him butcher the cows; and (8) Thompson, despite knowing that the cows did not belong to him, asked Ranger Wadsworth if he would be able to "keep the calf" because it had been born on his property. The combined and cumulative force of this evidence, viewed in the light most favorable to the verdict, is sufficient to prove that it was Thompson's conscious objective or desire "to withhold the property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property would be lost to the owner."

We are not persuaded by Thompson's arguments to the contrary. First, he asserts, without any citation to authority, that Hannah Bryant, a tenant on Thompson's property, was Thompson's legal "custodian and agent" and that they were "acting toward the same goal, that is, finding the owner of the cows." Thus, according to Thompson, when Bryant reported the cows, she was acting on Thompson's behalf and her actions should be imputed to him. However, there is no evidence in the record that Bryant was acting under Thompson's direction or authority

---

[1] Although Thompson claimed that the text message was a joke, the jury was entitled to believe otherwise. *See Brooks v. State*, 323 S.W.3d 893, 900 (Tex. Crim. App. 2010) ("The jury is the sole judge of the witnesses' credibility and the weight to be given their testimony."); *Hampton v. State*, No. 12-11-00057-CR, 2012 WL 344142, at *4 (Tex. App.—Tyler Jan. 31, 2012, no pet.) (mem. op., not designated for publication) (defendant's friend testified in murder trial that defendant was joking when he made statements that he would use shotgun to solve "a problem," "but the jury was free to assign its own reasonable conclusions to Appellant's statements").

when she reported the cows, and the jury could have reasonably inferred that she was not acting on Thompson's behalf. Thompson did not instruct Bryant to contact law enforcement, nor did he inform her that the cows did not belong to him and that he was attempting to locate their owner. He merely advised her that he "put cows in the back of your property" and told her to "[k]eep the fence up." Moreover, even if there were evidence that Bryant was acting on Thompson's behalf, Thompson had possession of the cows for over two weeks before Bryant reported them. During that time, Thompson made no attempt to contact law enforcement or find the owner of the cows.

Thompson also asserts that his intent is negated by the advice that he received from Walter Bryant, the former sheriff's deputy, to "pen [the cows] up" and wait for the owner to find them rather than contact the sheriff's office. But this demonstrates only that there was conflicting evidence on the issue of intent. There was some evidence, summarized above, that Thompson intended to deprive the owner of the cows and other evidence that he intended to keep the cows safe until the owner could be found. "[W]hen the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination." *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (citing *Jackson*, 443 U.S. at 319). "An appellate court cannot act as a thirteenth juror and make its own assessment of the evidence." *Nisbett*, 552 S.W.3d at 262. In a sufficiency review, this Court's "role on appeal is restricted to guarding against the rare occurrence when the factfinder does not act rationally." *Id.* We cannot say that it was irrational for the jury to credit the testimony of McClellan and the other witnesses for the State and not to credit the testimony of Thompson and Walter Bryant. On this record, we conclude that the evidence is sufficient to prove that Thompson had the requisite intent to commit the offense of theft. *See Griffin*, 614 S.W.2d at 159–60; *Williams*, 268 S.W.2d at 671–72; *Conerway v. State*, 701 S.W.2d 302, 303–04 (Tex.

9

App.—Houston [14th Dist.] 1985, no pet.); *see also Carrizales v. State*, No. 07-03-0302-CR, 2004 WL 2296329, at \*2 (Tex. App.—Amarillo Oct. 13, 2004, no pet.) (not designated for publication) (per curiam) (concluding that evidence was sufficient to support jury's finding that defendant intended to deprive owner of cattle when, among other circumstances, defendant planned to butcher steer and directed others to place steer in pen located on his property rather than remove steer from premises or return it to its owner).

We overrule Thompson's first and second issues.

**Prosecutorial misconduct**

In his third issue, Thompson asserts that the State committed prosecutorial misconduct by "intentionally misrepresent[ing] facts and law to the jury." Specifically, he complains of the prosecutor asking Ranger Wadsworth, "You saw text messages about how to butcher cattle, didn't you?" Wadsworth answered, "I did." Thompson claims that there were no text messages about "butchering" cattle, and the prosecutor knew this when he asked the question. Thompson further criticizes the prosecutor for "point[ing] out in questions to witnesses and in closing argument" that Thompson, in violation of the Agriculture Code, "did not call the sheriff as soon as reasonably possible" to report the cows. *See* Tex. Agric. Code § 142.003(a) ("If an estray, without being herded with other livestock, roams about the property of a person without that person's permission . . . the owner of the private property . . . shall, as soon as reasonably possible, report the presence of the estray to the sheriff of the county in which the estray is discovered."). Thompson argues that the prosecutor was "misrepresenting a civil statute" by implying that it was "penal in nature."

10

As the State observes, Thompson failed to raise either of these complaints in the court below. A defendant must object at trial to prosecutorial misconduct in order to preserve that issue for appellate review. *See Clark v. State*, 365 S.W.3d 333, 339–40 (Tex. Crim. App. 2012); *Castruita v. State*, 584 S.W.3d 88, 112 (Tex. App.—El Paso 2018, pet. ref'd); *Patterson v. State*, 496 S.W.3d 919, 928 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd); *see also* Tex. R. App. P. 33.1(a)(1). The proper method to preserve error from prosecutorial misconduct is to (1) make a timely and specific objection, (2) request an instruction that the jury disregard the prosecutor's comment or question, and (3) move for a mistrial. *See Penry v. State*, 903 S.W.2d 715, 764 (Tex. Crim. App. 1995); *Cook v. State*, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993); *Canada v. State*, 547 S.W.3d 4, 22 (Tex. App.—Austin 2017, no pet.). Thompson failed to do any of the above. Accordingly, nothing has been preserved for our review. *See Clark*, 365 S.W.3d at 340; *Castruita*, 584 S.W.3d at 114; *Canada*, 547 S.W.3d at 22.

We overrule Thompson's third issue.

**Indictment**

In his fourth issue, Thompson asserts that the indictment charging him with theft was defective. The indictment alleged that Thompson "unlawfully appropriate[d], by acquiring or otherwise exercising control over, property, to-wit: cattle, of the aggregate value of less than $150,000, stolen during a single transaction, from Coty Strain, the owner thereof, without the effective consent of the owner, and with intent to deprive the owner of the property." Thompson claims that "the indictment as written appears to accuse" him of appropriating cattle that had already been stolen, even though there was no evidence that the cattle had been stolen when

Thompson found them. In Thompson's view, this rendered the indictment "fundamentally defective."

Thompson raises this argument for the first time on appeal. It is well established that "[i]f the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding."[2] Tex. Code Crim. Proc. art. 1.14(b); *Jenkins v. State*, 592 S.W.3d 894, 902 (Tex. Crim. App. 2018); *see also Ex parte Rodgers*, 598 S.W.3d 262, 268 (Tex. Crim. App. 2020) ("Because Applicant and his trial counsel raised no objection to the indictment, they may not now challenge its efficacy to invoke the jurisdiction of the district court."); *Ex parte Gibson*, 800 S.W.2d 548, 551 (Tex. Crim. App. 1990) ("[I]f the instrument comes from the grand jury, purports to charge an offense and is facially an indictment, then it is an indictment for purposes of Art. V., § 12(b) [of the Texas Constitution], and its presentation by a State's attorney invests the trial court with jurisdiction to hear the case.").

A defendant may challenge for the first time on appeal an indictment that fails entirely to charge the commission of an offense. *See Walker v. State*, 594 S.W.3d 330, 339 (Tex.

_____

[2] This has been the law in Texas since 1985, when Article 1.14(b) was amended to require a defendant to object to substantive defects in the indictment prior to trial. *See Studer v. State*, 799 S.W.2d 263, 266–72 (Tex. Crim. App. 1990) (discussing legislative history of amendment); *see also Walker v. State*, 594 S.W.3d 330, 339 (Tex. Crim. App. 2020) ("Prior to 1985, a defect in the substance of an indictment was said to be 'fundamental error' because such a defect failed to confer jurisdiction upon the trial court, and any conviction had upon that instrument was therefore void."). In arguing that the indictment was "fundamentally defective," Thompson relies on *Shaddox v. State*, 594 S.W.2d 69 (Tex. Crim. App. 1980), a case that was decided prior to the 1985 amendment to Article 1.14(b). To the extent that *Shaddox* stands for the proposition that a defendant may challenge a substantive defect in the indictment for the first time on appeal, that proposition is no longer good law. *See Studer*, 799 S.W.2d at 267.

Crim. App. 2020); *Teal v. State*, 230 S.W.3d 172, 180 (Tex. Crim. App. 2007); *Duron v. State*, 956 S.W.2d 547, 550–51 (Tex. Crim. App. 1997). However, that is not the case here. The indictment charged Thompson with committing the offense of theft of cattle. *See* Tex. Penal Code § 31.03(a), (e)(5)(A). To the extent that the indictment might have been defective in alleging the manner or means by which Thompson committed the offense, he was required to object to that defect prior to trial. *See Swain v. State*, 181 S.W.3d 359, 363 (Tex. Crim. App. 2005). He failed to do so. Accordingly, any defect in the indictment has been waived. *See* Tex. Code Crim. Proc. art. 1.14(b); *Jenkins*, 592 S.W.3d at 902; *Ramirez v. State*, 105 S.W.3d 628, 630 (Tex. Crim. App. 2003); *Studer v. State*, 799 S.W.2d 263, 273 (Tex. Crim. App. 1990).

We overrule Thompson's fourth issue.

**Charge error**

In his fifth issue, Thompson asserts that the jury charge authorized a conviction on fewer elements than were alleged in the indictment. Specifically, the indictment alleged that Thompson: (1) appropriated property, to wit: cattle; (2) of a value less than $150,000.00 (3) *stolen during a single transaction*; (4) from Coty Strain; (5) without the effective consent of the owner; and (6) with the intent to deprive the owner of the property. However, the application paragraph of the charge did not require the State to prove that the cattle were "stolen during a single transaction," as alleged in the indictment. According to Thompson, "where a court's charge authorizes a jury to convict upon a lesser showing than what was alleged it contains a fundamental error and the cause must be remanded."

We review claims of jury-charge error under the two-pronged test set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). "Our first inquiry

13

is whether the jury charge contained error." *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015). "If error exists, we then analyze the harm resulting from the error." *Id*. "If the error was preserved by objection, any error that is not harmless will constitute reversible error." *Id*. "If the error was not preserved by objection, the error will not result in reversal of the conviction without a showing of egregious harm." *Id*.

In this case, Thompson did not object to the charge in the court below. Thus, "reversal is required only if the error was fundamental in the sense that it was so egregious and created such harm that the defendant was deprived of a fair and impartial trial." *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015). "Charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Id*. "Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'" *Id*. (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)). "In examining the record to determine whether charge error has resulted in egregious harm to a defendant, we consider (1) the entirety of the jury charge, (2) the state of the evidence, including the contested issues and weight of probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the trial record as a whole." *Reeves*, 420 S.W.3d at 816.

"A jury charge must distinctly set forth the law applicable to the case and set out all of the essential elements of the offense." *Martin v. State*, 200 S.W.3d 635, 639 (Tex. Crim. App. 2006) (citing Tex. Code Crim. Proc. art. 36.14); *see also Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995) ("Because the charge is the instrument by which the jury convicts, the charge must contain an accurate statement of the law and must set out all the essential elements of the offense." (internal citation omitted)). An essential element of the offense of theft

14

of cattle as alleged in the indictment is that the cattle were "stolen during a single transaction." *See* Tex. Penal Code § 31.03(e)(5)(A) (providing that theft of cattle is third-degree felony if cattle are "stolen during a single transaction and have an aggregate value of less than $150,000"). Accordingly, the omission of this element of the offense from the charge was error. *See Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016).

We must next determine if Thompson suffered egregious harm from the error. When examining the entirety of the jury charge, we observe that the first paragraph of the abstract portion of the charge correctly recites the statutory requisites of the offense: "A person commits an offense if the person unlawfully appropriates property with intent to deprive the owner of the property and the property was cattle that were *stolen during a single transaction* and the cattle had an aggregate value of less than $150,000." (emphasis added). Additionally, during voir dire, the State recited all the elements of the offense, including that the cattle were "stolen during a single transaction," and told the jury that "those are the elements we are going to have to prove" and that if the State failed to prove those elements, the jury would have to find Thompson "not guilty."

Moreover, whether the cows were stolen during a single transaction was not a contested issue at trial. The evidence showed that Thompson took possession of all three cows at the same time, and Thompson did not dispute this evidence. The only element of the offense that Thompson contested was his intent to deprive the owner of the cows. This is reflected in the closing arguments of the parties. The prosecutor, near the beginning of his argument, briefly discussed the uncontested facts of the case and then told the jury, "So the only argument that we are going to have here, I believe, from [defense counsel] is [Thompson's] intent. Was it his intent to deprive Coty Strain of his cattle?" The prosecutor then discussed in detail the evidence

15

that in the State's view proved Thompson's intent to deprive Strain of his cattle. Defense counsel, in his argument, also focused on intent, discussing in detail the evidence that he believed negated Thompson's intent and telling the jury, "Ladies and gentlemen, I'm going to ask you to return a verdict of 'not guilty' and I don't think it's that difficult, because it's all about intent." Defense counsel later added, "So that's what we are down to. We are down to intent." On this record, we cannot conclude that the charge error in this case was "so egregious and created such harm that the defendant was deprived of a fair and impartial trial." *See Marshall*, 479 S.W.3d at 845 (concluding that omission from charge of element of offense did not cause egregious harm in part because omission did not vitally affect defensive theory of case); *State v. Sanchez*, 393 S.W.3d 798, 804 (Tex. App.—El Paso 2012, pet. ref'd) (concluding that omission from charge of aggravating element of offense did not cause egregious harm in part because there was significant evidence of aggravating element in record); *Lane v. State*, 957 S.W.2d 584, 587 (Tex. App.—Dallas 1997, pet. ref'd) (concluding that omission from charge of element of offense did not cause egregious harm in part because element was not contested at trial); *see also Zuliani v. State*, No. 03-13-00490-CR, 2015 WL 3453942, at *12 (Tex. App.—Austin May 29, 2015, pet. ref'd) (mem. op., not designated for publication) (concluding that omission from charge of prior-conviction element of offense did not cause egregious harm in part because defendant stipulated to that element and case was "not about a prior conviction").

We overrule Thompson's fifth issue.

16

## CONCLUSION

We affirm the district court's judgment of conviction.

_____

Gisela D. Triana, Justice

Before Justices Goodwin, Triana, and Smith

Affirmed

Filed:   April 15, 2021

Do Not Publish