# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00423-CR

---

**Kendrick Kinard Kelly, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 483RD DISTRICT COURT OF HAYS COUNTY
### NO. CR-23-1316-B, THE HONORABLE TANNER NEIDHARDT, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Kendrick Kinard Kelly of assault-family violence by impeding breath or circulation. *See* Tex. Penal Code § 22.01(a)(1), (b)(2)(B). The district court sentenced Kelly to ten years' imprisonment but suspended imposition of the sentence and placed him on community supervision for ten years. *See* Tex. Code Crim. Proc. art. 42A.053(a)(1). On appeal, Kelly contends that the evidence is insufficient to support his conviction, that his trial counsel was ineffective, and that the district court erred by admitting extraneous-offense evidence of Kelly's prior assault against complainant. We will affirm the district court's judgment of conviction.

### BACKGROUND

Gary Colton Brigham, a friend of Kelly's who had lived with him for a year or two, called the Hays County Sheriff's Office (HCSO) reporting that Kelly had assaulted him.

HCSO Deputy Stefan Halterman received the call from dispatch and met with Brigham, who had some "fairly recent" injuries from "a day or two" before. Brigham's visible injuries included bruising of his left eye, abrasions around his neck, bruising on his upper left arm, an abrasion on his lower lip with swelling, and scabbed abrasions up and down his back.[1] Deputy Halterman testified that the bruising on both sides of Brigham's neck was consistent with "an event of strangulation."

On a Tuesday night, two days before his report to police, Brigham, his friend Jasmine Reyes, and Kelly walked to a bar near Brigham's house. Brigham and Reyes each had a drink; Kelly had a bottle of wine and some "Jägerbomb" shots. Brigham and Reyes left the bar around 11:00 p.m. and spent some time sitting around a fire pit in Brigham's front yard. Kelly returned from the bar and joined them after midnight.

A few hours later, around 2:00 a.m. on Wednesday, Brigham went into his bathroom and got ready for bed. After brushing his teeth and washing his face, he turned off the bathroom light. Seconds later he heard two big thuds, and then "Kendrick was just right in my face, like charging at me." Kelly held Brigham up against the bathroom mirror and faucet, breaking the faucet handle. Brigham testified that the attack continued outside the bathroom:

> And then he picked me up after that and slammed me outside of my bathroom. And then he was yelling, "Why did you lock the door? I told you not to lock the door." And then he was choking me. And I was trying to get up under my armoire to just get—you know, like, try to get away. And I was just trying to say, ["]I didn't lock the door. I'm sorry.["] Like, ["I]t's okay. Calm down.["] But I couldn't really speak much. And everything happened really fast. And then— then he got up and he was still yelling at me. And before he got up, he punched me in my nose and kind of banged my head on the ground a few times. And then

---

[1] Sheriff's office deputies took photos of Brigham's injuries, and those photos were admitted into evidence at trial.

he got up and he said, "I told you not to lock the door. You need to listen. That's disrespectful." And then he walked out of my room.

Brigham testified that being thrown around caused him pain. He did not understand what was going on and was frightened. His nose and mouth were bleeding, and his head was pounding. He was unable to speak, and he could not breathe because of the pressure on his neck from Kelly's hands. He tried to get away or just underneath a dresser where Kelly could not hit his face or choke him. Although the lights were off, Brigham realized it was Kelly when he heard his voice.

Brigham barricaded the door to his room and stayed there after Kelly left. On Thursday, Brigham reported the assault to police. He explained that he had never been the kind of person to call the police on someone and that Kelly "was like [his] brother." On Friday, Brigham began running a fever, was unable to "think right" or eat, and feared his "head was bleeding on the inside," so he went to the hospital. Medical records admitted into evidence showed that Brigham told hospital staff he was assaulted by his roommate, who had grabbed Brigham, smashed his head against a mirror, kneed him in the abdomen, struck him in the face multiple times, and choked him by placing his hands around Brigham's neck. Brigham was diagnosed with a fractured nose, abdominal trauma, and a concussion. At trial, Brigham was asked whether anything like this assaultive episode had ever happened between him and Kelly before, which Brigham confirmed:

Prosecutor: Had anything like this, any kind of assaultive episode, ever happened between you and Mr. Kelly in the past?

Brigham: Yes.

Prosecutor: How many times?

3

Brigham:  Twice.

After this incident, Brigham's only contact with Kelly was when he was trying to serve Kelly with notice of eviction.

Reyes testified that she also went inside the house before Kelly.  While Brigham was in the bathroom, she heard a loud noise coming from the front of the house.  Moments later, she saw Kelly enter Brigham's bedroom, and "he just went straight for Colton [Brigham]," who had just turned off the bathroom light.  Kelly grabbed Brigham, pushed him back into the bathroom and into a mirror, shattering it.  They ended up back in the bedroom, where Kelly slammed Brigham onto the concrete floor, "swinging at him."  At some point Brigham was trying to pull himself under a dresser to protect himself.  Then Kelly started choking Brigham.  Reyes could hear Brigham "gasping for air" while "on the ground" with Kelly "over him."  Kelly said something about "locking the front door" and about Brigham being "f'ing disrespectful."  Reyes froze.  She saw blood and yelled for Kelly to stop.  Eventually Kelly left.  Reyes saw that Brigham's nose kept dripping blood, his lip was busted, and he had marks on his face and around his neck.  Reyes used her phone to make video recordings of the broken mirror and the condition of the room after the incident.  The videos and a still photo from the video were admitted into evidence, showing blood on the floor and strands of Brigham's hair embedded in the cracked mirror.  Later, when Brigham began running a fever, had headaches, and was "feeling nauseous," Reyes took him to the hospital.  Reyes realized after the incident that the loud noise she heard initially was from Kelly hitting or getting into the locked front door.  She noticed the damage to that door, its dead bolt "completely pushed through[,] . . . the wood basically broke from the door being opened."

4

Kelly's former foster parent, Sherry Marroquin, testified that Kelly is known as a "gentle giant," a peacemaker, and a truthful person. She opined that he did not commit the offense.

The jury found Kelly guilty of assault-family violence by impeding breath or circulation as charged in the indictment. The district court suspended imposition of Kelly's sentence in accordance with the jury's verdict. Kelly filed this appeal.

## DISCUSSION

Kelly contends that the evidence is insufficient to support his conviction because "the prosecution's case was marred by unreliable testimonies, a lack of physical evidence, and an inability to provide conclusive proof linking [him] to the alleged crime."[2]

We review a challenge to the sufficiency of the evidence by considering whether, after viewing all the evidence in the light most favorable to the verdict, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Marshall v. State*, 479 S.W.3d 840, 845 (Tex. Crim. App. 2016). This standard gives full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts, *Jackson*, 443 U.S. at 319, and it applies whether the case was proven by direct or circumstantial evidence, *Romano v. State*, 610 S.W.3d 30, 34 (Tex. Crim. App. 2020).

---

[2] Kelly challenges both the legal and factual sufficiency of the evidence. But the Court of Criminal Appeals has decided that the "legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.); *see Lucio v. State*, 351 S.W.3d 878, 895 (Tex. Crim. App. 2011) ("We do not review the factual sufficiency of the evidence to support a jury's finding on the elements of a criminal offense that the State is required to prove beyond a reasonable doubt."); *Canada v. State*, 547 S.W.3d 4, 12 n.3 (Tex. App.—Austin 2017, no pet.) (same).

"The jury acts as the sole judge of the credibility of the witnesses and may choose to believe all, some, or none of the testimony presented." *Garcia v. State*, 667 S.W.3d 756, 762 (Tex. Crim. App. 2023). Jurors may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs when drawing inferences from the evidence. *Id.* When the record supports conflicting inferences, we presume that the jury resolved the conflicts in the prosecution's favor and defer to the jury's factual determinations. *Id.* Our role on appeal is restricted to guarding against the rare occurrence when a factfinder does not act rationally. *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018).

**Sufficiency of evidence supporting assault conviction**

The offense of assault-family violence by impeding breath or circulation is defined in Penal Code subsection 22.01(b)(2)(B), which states in relevant part:

> (a) A person commits an offense if the person:
>
>> (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;
>
> . . . .
>
> (b) An offense under Subsection (a)(1) is a Class A misdemeanor, except that the offense is a felony of the third degree if the offense is committed against:
>
> . . . .
>
>> (2) a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code, if:
>>
>> . . . .
>>
>>> (B) the offense is committed by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth[.]

Tex. Penal Code § 22.01(b)(2)(B).

The required type of relationship referenced in subsection (2) of the assault-family-violence statute includes a person who is a member of the same "household" as the defendant. *See id.* § 22.02(b)(2); Tex. Fam. Code §§ 71.0021(b), .003, .005. "Household" is defined in the Family Code as "a unit composed of persons living together in the same dwelling, without regard to whether they are related to each other." Tex. Fam. Code § 71.005. Kelly's indictment tracked the assault-family-violence statute, alleging that he

> did then and there intentionally, knowingly, or recklessly cause bodily injury to Gary Brigham, a member of the Defendant's household, by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of Gary Brigham, by applying pressure to the throat or neck or by blocking the nose or mouth of Gary Brigham.

Evidence presented during trial supports this charged offense. The jury heard testimony that Brigham and Kelly were roommates for a year or two. Brigham and Reyes identified Kelly as the person who assaulted Brigham, choked him, and prevented him from breathing. Brigham testified that he could not breathe because of the pressure on his neck from Kelly's hands. Brigham, who had known Kelly for more than a decade, recognized his voice. Reyes, who had known Kelly for about four years, testified that she saw him choking Brigham and heard Brigham gasping for air on the ground. Brigham and Reyes heard thuds or loud noises just before the assault, and both recalled Kelly saying something about a locked door and being disrespectful toward him. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) ("Motive is a significant circumstance indicating guilt.").

Kelly argues that a locked door is a nonsensical basis for the assault and that Brigham and Reyes provided unreliable testimony. But the jury is entrusted with determining

7

the credibility of the witnesses and resolving any conflicting inferences drawn from the evidence. *See Garcia*, 667 S.W.3d at 762. And the evidence at trial would have allowed a rational jury to reasonably infer that Kelly—who stayed at the bar about an hour after Brigham and Reyes left—was affected by the bottle of wine and "Jägerbomb" shots he consumed and that he broke the front-door lock and assaulted Brigham out of frustration. Kelly argues that the prosecution should have presented physical evidence and "conclusive proof" linking him to the charged offense. That is not the standard. A perpetrator's identity may be proven by direct evidence, circumstantial evidence, or by reasonable inferences from the evidence. *Ingerson v. State*, 559 S.W.3d 501, 509 (Tex. Crim. App. 2018); *see Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd) ("When there is no direct evidence of the perpetrator's identity elicited from trial witnesses, no formalized procedure is required for the State to prove the identity of the accused."). Here, Reyes was an eyewitness to the assault, Brigham recognized his roommate's voice during the assault, and both identified Kelly as the perpetrator of that assault. We conclude that the entirety of the evidence at trial, viewed in the light most favorable to the verdict, is legally sufficient to support the jury's finding that Kelly committed the offense of assault-family violence against Brigham by impeding his breath or circulation. We overrule Kelly's first issue.

**Ineffective assistance of counsel**

Next, Kelly contends that he received ineffective assistance of counsel during trial based on counsel's failure to cross-examine Brigham thoroughly, deliver a persuasive closing

argument, and object to the admission of prior alleged assaults between Kelly and Brigham as unfairly prejudicial under Texas Rule of Evidence 403.[3]

We evaluate ineffective-assistance-of-counsel complaints under the Sixth Amendment using a two-pronged test:  (1) whether counsel was deficient and (2) whether the defendant suffered prejudice resulting from counsel's error.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hart v. State*, 667 S.W.3d 774, 781 (Tex. Crim. App. 2023).[4]  To establish that counsel's actions were deficient, the defendant must show, by a preponderance of the evidence, that counsel's actions fell below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 687-88; *Hart*, 667 S.W.3d at 781.  There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; thus, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  *Strickland*, 466 U.S. at 689; *Hart*, 667 S.W.3d at 781-82.  Courts should consider the reasonableness of counsel's actions at the time, rather than viewing those actions through the benefit of hindsight.  *Strickland*, 466 U.S. at 689; *Hart*, 667 S.W.3d at 782.  Courts should make this determination in light of all the circumstances to determine whether counsel's actions fall outside the wide range of professionally competent assistance.  *Strickland*, 466 U.S. at 690; *Hart*, 667 S.W.3d at 782.

Claims of ineffective assistance must be firmly rooted in the record.  *Hart*, 667 S.W.3d at 782.  In most circumstances, the record on direct appeal is insufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic

---

[3] Kelly notes that during trial his counsel objected only that this evidence "was irrelevant to the elements of the charged offense."

[4] We do not reach the prejudice prong because we resolve this issue on the deficiency prong.

decision-making as to overcome the strong presumption that his conduct was reasonable and professional. *Id.* Thus, trial counsel should ordinarily be afforded an opportunity to explain his conduct before being denounced as ineffective. *Id.* A record explaining counsel's thought processes and trial strategy is usually developed in a hearing on a motion for new trial or on a writ of habeas corpus. *Redmond v. State*, 30 S.W.3d 692, 698-99 (Tex. App.—Beaumont 2000, pet. ref'd).

In the absence of that opportunity, when faced with an undeveloped record on direct appeal, courts commonly presume a strategic motive if any can be imagined and conclude that counsel's performance is deficient only if the conduct was so outrageous that no competent attorney would have engaged in it. *Hart*, 667 S.W.3d at 782. Counsel's actions are considered deficient only if the court finds, as a matter of law, that "no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning." *Id.* (quoting *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011)).

Kelly did not file a motion for new trial, and the record is silent as to trial counsel's reasons for the actions and omissions that Kelly complains about on appeal. Thus, this case falls into the category of ineffective-assistance claims raised on direct appeal for which the record is undeveloped because it does not adequately reflect counsel's reasoning. *See id.* at 783. Under these circumstances, because counsel has had no opportunity to explain his actions, we will assume a strategic motive, if one can be ascertained, and find counsel deficient only if his conduct was so outrageous that no competent attorney would have engaged in it or, stated differently, if no reasonable trial strategy could justify counsel's actions. *Id.*

Kelly contends that his trial counsel was ineffective based on counsel's failure to cross-examine Brigham thoroughly, deliver a persuasive closing argument, and object to the

10

admission of prior alleged assaults between Kelly and Brigham as unfairly prejudicial under Texas Rule of Evidence 403. Regarding cross-examination, Kelly contends that trial counsel should have challenged the nonsensical, locked-door basis for the assault; Brigham's identification of Kelly as the perpetrator in the dark, based only on his voice; and Brigham's delay in making a police report. A suggestion that cross-examination should have been conducted differently does not rebut the presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Resendiz v. State*, 112 S.W.3d 541, 548 (Tex. Crim. App. 2003); *see Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979) (concluding that just because another attorney might have pursued different strategy does not support finding of ineffectiveness of counsel). Trial counsel may have thought that extensive cross-examination on the topics suggested here would have been futile or risky given the evidence indicating that Kelly's judgment that morning may have been impaired by alcohol consumption and that Brigham would likely be familiar with Kelly's voice after knowing him for a decade and living with him for one or two years. Trial counsel may have also thought that Brigham appeared credible to the jury when he testified that he delayed his report to police because he had never been the kind of person to call the police on someone and because Kelly "was like [his] brother."

Kelly complains that trial counsel's closing argument was unpersuasive and that counsel failed to mention "inconsistencies and absurdities" in Brigham's testimony, the lack of physical evidence, and the implausibility of the prosecution's theory. But trial counsel's closing argument addressed the lack of physical evidence for the strangulation; that Brigham's injuries were "not recent" and could have been caused by something else; that "there's no solid evidence"; and that the marks on Brigham's neck depicted in the photos "don't fit this man's hands." The type of closing argument to make is "clearly trial strategy." *Ortiz v. State*,

11

866 S.W.2d 312, 315 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd). Trial strategy will be reviewed only if the record reflects that the argument was without any plausible basis. *Id.* On this undeveloped record, we cannot conclude that the closing argument trial counsel presented to the jury lacked "any plausible basis." *See id.*

Kelly also faults trial counsel for not objecting to the admission of prior alleged assaults between Kelly and Brigham as unfairly prejudicial under Texas Rule of Evidence 403. *See* Tex. R. Evid. 403 (allowing court to exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice). The extraneous-offense evidence consisted of Brigham's answers to these two questions, without elaboration: "Q.: Had anything like this, any kind of assaultive episode, ever happened between you and Mr. Kelly in the past?" "A.: Yes." "Q.: How many times?" "A.: Twice." The general wording of these questions did not identify the instigator of the assaults, the severity of any resulting injury, or the timeframe when they occurred. Trial counsel may have decided to withhold his objections to avoid drawing unwanted attention to this issue, to suggest that the incidents were merely minor skirmishes between longtime friends, or to prevent the impression that Kelly had something to hide from the jury. *See Huerta v. State*, 359 S.W.3d 887, 894 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (concluding that counsel may have decided to allow prosecutor to discuss details of defendant's prior theft case to make defendant seem more honest and forthright, to minimize seriousness of earlier offense, or to avoid drawing unwanted attention to that issue); *see also Thomas v. State*, 886 S.W.2d 388, 392 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (concluding that trial counsel's lack of objection to hearsay testimony was plausible trial strategy designed to persuade jury with his appearance of candor and confidence that evidence presented was not harmful).

Because counsel was given no opportunity to explain his motives, and because his decisions on conducting cross-examination, delivering closing argument, and objecting to extraneous-offense evidence could have been part of a conceivable trial strategy that he may have reasonably believed would be beneficial to Kelly, we cannot conclude from this record that counsel was deficient. *See Hart*, 667 S.W.3d at 784. We overrule Kelly's second issue.

**Admission of extraneous-offense evidence**

Lastly, Kelly contends that the district court erred by admitting extraneous-offense evidence of Kelly's prior assaults against Brigham, a member of Kelly's household. The State offered evidence of the prior assaults to show the nature of Kelly and Brigham's relationship—specifically, that it was not always a good one—and why Brigham might have decided to make a police report after an initial delay. Texas Code of Criminal Procedure article 38.371(b) allows evidence of "all relevant facts and circumstances" that may assist a trier of fact in a prosecution involving an offense against a member of the defendant's household, including evidence "regarding the nature of the relationship between the actor and the alleged victim." Tex. Code Crim. Proc. art. 38.371(b). However, the relationship evidence must be otherwise admissible under the rules of evidence. *See id.* (making evidence offered under 38.371(b) subject to rules of evidence or other applicable law).

Kelly contends for the first time on appeal that evidence of the prior assaults offered under article 38.371(b) was more prejudicial than probative under Texas Rule of Evidence 403 and offered only as proof that he acted in conformity with his bad character, a purpose prohibited by Texas Rule of Evidence 404(b). *See* Tex. R. Evid. 403, 404(b). But Kelly did not preserve those evidentiary complaints for appeal with an objection during trial. *See* Tex.

R. App. P. 33.1(a)(1)(A) (requiring party to preserve error for appeal by making timely objection stating grounds for ruling that party sought from trial court with sufficient specificity to make trial court aware of that complaint).[5]

To preserve a complaint under Rule 403 or Rule 404(b) when a trial court admits extraneous-offense evidence to show the nature of a relationship between a defendant and complainant under Code of Criminal Procedure article 38.371, the defendant must specifically object at trial. *See Luna v. State*, 687 S.W.3d 79, 102 (Tex. App.—Eastland 2024, pet. ref'd) (concluding that Rule 404(b) character-conformity complaint as to wife's testimony about defendant-husband's past abuse of her and his aggressive behavior toward her was not preserved by objection at trial); *Keller v. State*, 604 S.W.3d 214, 228 (Tex. App.—Dallas 2020, pet. ref'd) (concluding that Rule 403 complaint about unfairly prejudicial nature of child's testimony about prior incident of defendant-father's sexual abuse of her was not preserved by objection at trial). The record shows that during trial Kelly raised only a relevance objection: "[T]his has nothing to do with the elements of the offense. This so-called nature of the relationship stuff has nothing to do with the elements of the offense and, therefore, shouldn't be admissible."

Preservation is a systemic requirement. *Williams v. State*, 707 S.W.3d 233, 247 (Tex. Crim. App. 2024). A first-tier appellate court may not reverse a judgment of conviction without first addressing any issue of error preservation. *Id.* Most complaints are forfeited by a failure to object; that is, they must be preserved. *Id.* When a complaint must be preserved, the party raising the complaint on appeal must have complained to the trial court in a timely fashion and stated the grounds for the ruling sought. *Id.* Further, the complaint at trial must match the

---

[5] In his ineffective-assistance complaint, Kelly acknowledges that his trial counsel did not raise a Rule 403 objection contending that this evidence was unfairly prejudicial.

14

claim raised on appeal. *Id.* "The purpose of requiring a specific objection in the trial court is twofold: (1) to inform the trial judge of the basis of the objection and give him the opportunity to rule on it; [and] (2) to give opposing counsel the opportunity to respond to the complaint." *Douds v. State*, 472 S.W.3d 670, 674 (Tex. Crim. App. 2015).

When an issue has not been properly preserved for appeal, we should not address the merits of that issue. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009). Because Kelly did not make a Rule 403 or 404(b) objection when evidence of his prior assaults against Brigham was offered under article 38.371(b) at trial, and because Kelly's arguments on appeal relying on those rules of evidence do not comport with the only objection he raised below, we conclude that he failed to preserve his complaints about admission of that evidence. *See* Tex. R. App. P. 33.1(a)(1)(A); *Williams*, 707 S.W.3d at 247; *Ford*, 305 S.W.3d at 530; *Luna*, 687 S.W.3d at 102; *Keller*, 604 S.W.3d at 228. We overrule Kelly's third issue.

## CONCLUSION

We affirm the district court's judgment of conviction.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Kelly and Ellis

Affirmed

Filed: August 21, 2025

Do Not Publish